BEHLMER v. LOUISVILLE & N. R. CO. et al.[1]

(Circuit Court of Appeals, Fourth Circuit.   November 3, 1897.)

No. 173.

1. INTERSTATE COMMERCE COMMISSION—ORDER BINDING ON SUCCESSOR.
    A valid order of the interstate commerce commission, made in a proper proceeding against certain railroad companies, directing each of them to cease to make certain unlawful freight charges under a joint traffic arrangement, is binding on the successor of one of such companies, although the name of such successor does not appear in the order.

2. SAME—LONG AND SHORT HAUL—WATER COMPETITION.
    To justify a greater charge for a shorter distance because of water competition, the transportation as to which such competition exists must be concerning freight to the longer-distance point, which, if not carried by the road complained of, could reach that point by water transportation.

3. INTERSTATE COMMERCE—COMPETITION.
    The competition of one transportation line cannot be said to meet that of another, for the carriage of traffic from any particular locality, unless one line could perform the service if the other did not.

4. SAME—DISSIMILAR CIRCUMSTANCES AND CONDITIONS—BURDEN OF PROOF.
    Where a greater rate is charged for a shorter than for a longer concurrent haul over the same route, it is incumbent on the carrier to show the existence of substantially dissimilar circumstances and conditions to justify such charge.

5. SAME—EFFECT OF COMPETITION — DISSIMILAR CIRCUMSTANCES AND CONDITIONS.
    Competition between carriers subject to the interstate commerce act does not produce such dissimilarity of circumstances and conditions as will justify such carriers in making a greater charge for a shorter than for a longer haul, without authority granted by the commission.[2]

6. SAME—IMPORTANCE OF TRAFFIC—JUSTIFIABLE DISCRIMINATION.
    That the smaller charge for the longer haul is of great importance to the longer-distance point, in enabling its merchants to build up a great trade that would otherwise be lost, is no justification for such discrimination.
    Morris, District Judge, dissenting.

Appeal from the Circuit Court of the United States for the District of South Carolina.

C. B. Northrop, for appellant.

Ed. Baxter, W. A. Henderson, J. W. Barnwell, J. B. Cumming, and J. E. Burke, for appellees.

Before GOFF, Circuit Judge, and HUGHES and MORRIS, District Judges.

GOFF, Circuit Judge.   On the 27th day of June, 1894, the interstate commerce commission entered an order requiring the appellees to cease and desist on or before the 15th day of July, 1894, and thenceforth abstain, from charging, demanding, collecting, or receiving any greater compensation in the aggregate for the transportation of hay or other commodities carried, by and under the circumstances and conditions similar to those appearing in this case, from Memphis, in the state of Tennessee, to Summerville, in

[1] Rehearing denied November 24, 1897.

[2] See, however, Interstate Commerce Commission v. Alabama Midland Ry. Co., 18 Sup. Ct. 45.

the state of South Carolina, than that contemporaneously charged and received for the transportation of hay and such other commodities for the longer distance from Memphis aforesaid to Charleston, in the state of South Carolina. Such order was entered as the result of the hearing of the petition that had been theretofore filed before such commission by the appellant, Henry W. Behlmer. In his complaint so filed he alleged, in behalf of himself and other merchants and residents of Summerville: That the defendants were charging an unreasonable and excessive rate, of 28 cents per 100 pounds, on hay in car-load lots, from Memphis to Summerville. That Summerville is an incorporated town, of considerable size and importance, situated on the South Carolina Railway, in the state of South Carolina, and 22 miles inland from the city of Charleston, and that said rate of 28 cents per 100 pounds is 9 cents per 100 pounds greater than the defendants charge and receive for transporting hay in car loads from Memphis, through Summerville, to Charleston, and that such greater charge constituted a violation of the long and short haul clause of the interstate commerce act. That said rate of 28 cents to Summerville was equal to the rate of 19 cents in force on hay in car loads from Memphis, through Summerville, to Charleston, with the local rate of 9 cents per 100 pounds charged over the South Carolina Railway for carrying hay from Charleston back to Summerville, and that the 9-cent local rate which the complainant was forced to pay, in addition to the through Charleston rate, in order to get hay transported from Memphis to Summerville, was unreasonable and excessive. That the petitioner carried on a wholesale hay and grain business in said town of Summerville, and was thus 22 miles nearer than Charleston to the Western points where grain shipments originated. That the petitioner received at Summerville two car loads of hay ordered by him, and shipped to him, from Memphis, Tenn., which hay was so transported to him from Memphis to Chattanooga, 310 miles, by and over the lines of the Memphis & Charleston Railroad; thence to Atlanta, Ga., 152 miles, by the lines of the East Tennessee, Virginia & Georgia Railroad; thence to Augusta, Ga., 171 miles, over the lines of the Georgia Railroad; thence to Summerville, 115 miles, over the lines of the South Carolina Railway Company. That the defendants were common carriers, under a common control and management, for continuous carriage or shipment, and were engaged in the transportation of passengers and property wholly by railroad, between the points mentioned. Also, that the two car loads of hay referred to were hauled from Memphis to Summerville over the same line, in the same direction as Charleston, and under substantially similar circumstances and conditions as was the Charleston traffic; that the haul from Memphis to Summerville was 22 miles shorter than the haul from Memphis to Charleston, and that such shorter distance was included in the longer distance; that the petitioner was forced to pay 28 cents per 100 pounds on said shipment to Summerville, the shorter distance, when the rate to Charleston, the longer distance, was 19 cents per 100 pounds; that the petitioner was thereby obliged to pay $56, in the aggregate, as

freight on the two car loads of hay from Memphis to Summerville, when the same shipment would have been made by the same roads, over the same rails, in the same direction, to Charleston, a greater distance of 22 miles, for a less sum, to wit, $38, in the aggregate. The petitioner further alleged that the local rate of 9 cents per 100 pounds for 22 miles, as also the aggregate charge of 28 cents per 100 pounds from Memphis to Summerville, was excessive and unreasonable, and therefore in violation of the act to regulate commerce. It was further alleged by the petitioner that all of the railway lines mentioned in the petition, and made defendants in said proceedings, were members of the Southern Railway & Steamship Association, and that the discrimination and excessive rates against Summerville existed, not only on hay, but on all other articles of interstate commerce coming to that place, greatly to the detriment and disadvantage of that town, and to the business of its merchants. The petitioner prayed that the notice required in such cases issue to said railroad, and that the interstate commerce commission would order that the defendants cease from violations of the law in the particulars mentioned, and for such other and further relief as the commission might think proper.

The notice issued, and the defendants duly appeared and filed their answers. The joint answer of the receivers of the East Tennessee, Virginia & Georgia Railway Company and of the Memphis & Charleston Railroad Company admits that such companies are subject to the act to regulate commerce, and, in effect, that the shipment of hay took place as set forth in the petition; but it was not admitted therein that the rates specified constituted a violation of the law, and proof of the same was demanded. The answer of the lessees of the Georgia Railroad, as also the answer of the receivers of the South Carolina Railway Company, are, in substance, the same. Concerning the petitioner's allegations of a violation of the fourth section of the interstate commerce act, the answers make the following averments, in substance: That the Georgia Railroad Company and the other carriers complained against have no joint through tariff from Memphis to Summerville, and that, therefore, they have no "line," in the sense of said section, from Memphis to Summerville, on which that section can operate; that the transportation of the two car loads of hay from Memphis to Summerville was not done under substantially similar circumstances and conditions as the transportation of like property from Memphis to Charleston, for the reason that Summerville is a local station on the South Carolina Railway. not on any water route, and that enterprise and capital has not constructed more than one railroad to it; that consequently it has not the advantage of competition of carriers, as the said railroad on which it is located is not compelled by competition to choose between a reasonable rate and a rate which is much below what is reasonable; and that at Charleston there exists competition with numerous other all-rail routes between Memphis and that city, eight of which are mentioned by name, and the lines composing the same set forth in detail. The claim was made by the defendants in their answers that

all such lines were actual competitors for business from Memphis to Charleston; that Charleston was a port on the Atlantic Coast, easy of access for vessels from Baltimore, Philadelphia, New York, Boston, and other Eastern ports from which hay is shipped by water; that if the railroads running from Memphis to Charleston charged rates to all places as high as the rate to Summerville, although the latter rate is in itself reasonable, no hay would be shipped from Memphis to Charleston, but the latter city would be supplied with hay from the North Atlantic ports, and said railroads would not only be deprived of such business, but that Memphis would lose the hay market; that the rates on Western produce to Charleston and other coast cities are made with a view to actual existing water competition; that Western produce, such as grain and hay, can be shipped from Chicago to Charleston, through the ports of New York, Philadelphia, or Baltimore, over continuous water routes, by the lakes and canal, or over combined rail and water routes; that the all-rail lines seeking to do business between Chicago, Charleston, and the coast cities are compelled to make their rates approximate those offered by the continuous water route, or the combined rail and water routes; that the all-rail routes make their rates as much higher as the difference in services will permit, and those rates are correspondingly adjusted from all Western points, such as Evansville, Cairo, St Louis, and Memphis, the present all-rail rates on hay per 100 pounds being as follows: From Chicago, 33 cents; from St Louis, 28 cents; from Louisville, Evansville, and Cairo, 23 cents; from Memphis, 19 cents. The defendants claimed, therefore, that the rate from Memphis to Charleston on hay was forced upon their lines by actual existing water competition, as well as by other additional competition beyond their control; that the controlling element in said competition is the lake, canal, and ocean transportation between Chicago and Charleston, or the lake transportation from Chicago to Buffalo, or other lake ports, thence by rail to New York, and thence by ocean to Charleston, or rail transportation from Chicago to Baltimore, Philadelphia, or New York, and thence by ocean to Charleston.

The case being at issue upon the complaint and answers (the testimony having been duly taken), the same was, after argument by counsel, duly submitted to the commission, which directed the order to the appellees hereinbefore referred to; and, as required by law, it caused a properly authenticated copy of its report, and of its findings of fact and conclusions thereon, together with a copy of said order, to be delivered to each and all of the parties to said cause, their receivers and successors in operation. The defendants to said proceeding before the interstate commerce commission having failed and refused to obey such order, the said Henry W. Behlmer filed his petition, as he was authorized by the interstate commerce law to do, in the circuit court of the United States for the district of South Carolina, in which the action had before the commission was fully set out, and the refusal of the defendants therein to comply with what he charged to be the lawful order of the commission was alleged; and the prayer was made that an or-

der be entered granting to the petitioner a writ of injunction restraining the defendants, their officers, servants, and attorneys, from continuing in their violation and disobedience to said order of the interstate commerce commission, and that finally an order and decree be issued restraining the said defendants, and each of them, and their officers, servants, and attorneys, from further violating or disobeying the requirements of said order of the commission, and decreeing permanent obedience to the same, together with such further and additional orders as are usually entered under such circumstances. The court below on the 2d day of November, 1894, directed that the defendants appear and answer said petition, and show cause, if any they could, why the prayer of the same should not be granted. In the same order it was provided that the defendants be restrained and enjoined, until the further order of the court, from charging, collecting, or receiving any greater compensation in the aggregate for the transportation of hay or other commodities carried by them, under circumstances and conditions similar to those in this case, from Memphis, in the state of Tennessee, to Summerville, in the state of South Carolina, than that contemporaneously charged and received for the transportation of hay and such other commodities, respectively, for the longer distance from Memphis to Charleston; and also the South Carolina & Georgia Railroad Company was restrained and enjoined from imposing, charging, and collecting the added local rate of 9 cents in addition to the through rate of 19 cents to Charleston. The case was duly matured, and came on to be finally heard on the 11th day of December, 1895, when, after argument, the court took the same under advisement, and afterwards, on the 22d day of January, 1896, entered a decree dismissing the bill. From this decree the petitioner appealed.

At the time of the institution of the proceedings before the interstate commerce commission, the South Carolina Railway Company was represented by Daniel H. Chamberlain, its receiver, who was made a defendant, and who filed his answer to the petition. The proceedings were instituted in December, 1892, and the order of the commission issued on the 27th day of June, 1894; but prior thereto, on April 12, 1894, the South Carolina Railway Company was sold by virtue of a decree of the circuit court of the United States for the district of South Carolina, entered in the cause of Bound v. South Carolina Railway Co. et al., in which said cause the said Daniel H. Chamberlain had been appointed such receiver. On the 12th day of May, 1894, the purchaser of said property under said foreclosure sale conveyed the same to the South Carolina & Georgia Railroad Company, a defendant herein. That company moved the court below to dismiss these proceedings, so far as it was concerned, for the reason that there was no evidence before the court of any notice to, or service of the same upon, said company, of the institution of this action before the interstate commerce commission, nor any evidence of any refusal or neglect by it to obey the order of the commission. The court below was of opinion that there was no evidence of the service of the commis-

sion's order on the South Carolina & Georgia Railway Company, nor of its refusal or neglect to obey the same; but as there were other defendants, as to whom it was necessary to dispose of the questions raised, the court proceeded to a decree concerning the same.

The petition filed in the court below avers that the findings and conclusions of the commission in the matter of the petition filed before it by the appellant, together with a copy of the order and notice, were delivered to each and all of the parties to the cause, their receivers and successors in operation. We think the evidence sufficiently sustains these allegations. The South Carolina Railway Company had due notice of the proceedings before the commission, and filed its answer, through its receiver; and it plainly appears that a registered letter was sent from the office of the secretary of the commission in July, 1894, and duly delivered at Charleston to the successor of said South Carolina Railway Company (the South Carolina & Georgia Railroad Company), which contained a copy of the opinion and order of the interstate commerce commission made and filed in the matter of said petition. That such copy was received by the South Carolina & Georgia Railroad Company is not doubted, and the point relied upon by that company in its motion to dismiss made in the court below was that the name of the South Carolina & Georgia Railroad Company is not mentioned in said order and opinion, and the further fact that said company was organized after the date when such order and opinion were made and filed. In our judgment, this position of the South Carolina & Georgia Railroad Company is without merit. So far as the questions involved in this controversy are concerned, we think it had sufficient notice, and in fact that it was bound by the notice served upon, and the answer filed by, the receiver of the South Carolina Railway Company. The petitioner, in his complaint filed with the commission, charged the South Carolina Railway Company and its receiver with unlawfully charging an unreasonable rate of freight on certain articles transported over its line, and other lines with which it had traffic arrangements; and the commission, after full investigation, found that the petitioner's allegation was true, and ordered that said road and the others connected with it cease, on or before July 15, 1894, to make such unlawful charges. We are utterly unable to agree with the contention that such order of the commission was rendered absolutely nugatory, within a few days after it was issued, by the mere fact that the name of one of the railroads mentioned therein had in the meantime been changed, while the traffic arrangements theretofore in existence were still in force. To so hold would render it impossible for any petitioner to obtain relief in cases similar to this, and would in fact prevent the commission from enforcing its lawful orders. The supreme court of the United States, in the case of U. S. v. Trans-Missouri Freight Ass'n, 166 U. S. 290, 309, 17 Sup. Ct. 540, in effect decides this point in the manner we have indicated, when it says, in substance, that if, by the mere dissolution of the association originally proceeded against, the suit abates, then de-

fendants have thereby discovered an effectual means to prevent the judgment of the court being given on the question really involved in the case.

We do not think it essential to the decision of this case to further consider the argument of counsel relating to the pecuniary liability of the purchaser of property sold under foreclosure decree, nor of the responsibility of such purchaser for contracts made by the receiver prior to such sale, as in our judgment the propositions of law therein involved are not applicable to the facts and circumstances of this case. We conclude that the court below had jurisdiction of the parties and of the subject-matter involved, and, such being the case, it was its duty, as a court of equity, to make both its jurisdiction and its remedy effectual for perfect relief, if it found the allegations of the petition to be true.

This brings us to the real question in this case, and that is, have these defendants violated the provisions of the fourth section of the act of congress approved February 4, 1887, entitled "An act to regulate commerce"? 24 Stat. 379. That section reads as follows:

"Sec. 4. That it shall be unlawful for any common carrier subject to the provisions of this act to charge or receive any greater compensation in the aggregate for the transportation of passengers or of like kind of property, under substantially similar circumstances and conditions, for a shorter than for a longer distance over the same line, in the same direction, the shorter being included within the longer distance; but this shall not be construed as authorizing any common carrier within the terms of this act to charge and receive as great compensation for a shorter as for a longer distance; provided, however, that upon application to the commission appointed under the provisions of this act, such common carrier may, in special cases, after investigation by the commission, be authorized to charge less for longer than for shorter distances for the transportation of passengers or property; and the commission may from time to time prescribe the extent to which such designated common carrier may be relieved from the operation of this section of this act."

We find this case, so far as the fourth section is involved, to be quite similar to the case of Cincinnati, N. O. & T. P. R. Co. v. Interstate Commerce Commission, 162 U. S. 184, 16 Sup. Ct. 700, commonly known as "The Social Circle Case." That the appellees, in transporting the hay and other property mentioned in the petition filed in this cause, and in establishing the rates on the same from Memphis to Charleston and from Memphis to Summerville, were engaged in such transportation under a common management for continuous carriage or shipment, within the meaning of that language as used in the act to regulate commerce, is, we think, without doubt; and therefore it follows that it was within the jurisdiction of the interstate commerce commission to ascertain whether, in charging a higher rate for a shorter than for a longer distance over the same line in the same direction (the shorter being included within the longer distance), the appellees were transporting such property under substantially similar circumstances and conditions. The appellees alleged, both before the commission and the court below, such substantial dissimilarity of circumstances and conditions as justified them in making the greater charge for the shorter haul complained of in the petition, and upon them was the burden of showing affirmatively that such circumstances and

conditions were in fact substantially dissimilar. The commission, in ascertaining the facts, found against this claim of the railroad companies, and entered the order the enforcement of which was the object of the petition filed by the appellant. The circuit court, however, on hearing the matters involved, sustained the claim of the appellees, and refused to enforce the order of the commission. The appellees claim that the substantial dissimilarity in the circumstances and conditions under which they transport property from Memphis to Charleston and from Memphis to Summerville is created by (1) the competition of various markets for the trade of Charleston, such as New York, Boston, Philadelphia, Baltimore, Chicago, and other points which can reach Charleston by all-water lines or by all-rail lines, or part-rail and part-water routes; (2) the competition of all-rail lines between Memphis and Charleston.

The decisions of the interstate commerce commission concerning the proper construction of this fourth section of the commerce act have not been uniformly sustained by the decrees of the courts of the United States in cases instituted for the purpose of enforcing the orders of the commission concerning that section; and therefore, prior to the announcement of the opinion of the supreme court in the Social Circle Case, there was much confusion concerning the true meaning of the same. A careful reading of that opinion impels us to the conclusion that the construction given that section by the interstate commerce commission in a number of cases decided by it prior to such decision is the proper one. In this connection may be cited the following: James & Mayer Buggy Co. v. Cincinnati, N. O. & T. P. R. Co., 3 Interst. Commerce Com. R. 682; Georgia R. Co. v. Clyde S. S. Co., 4 Interst. Commerce Com. R. 120; Chattanooga Board of Trade v. East Tennessee, V. & G. R. Co., Id. 213. Such being our conclusions, we have now to determine whether or not the facts found by the commission are supported by the evidence taken in this case, or, in other words, whether or not the circumstances and conditions attending the transportation of hay from Memphis to Charleston and from Memphis to Summerville are so dissimilar as to justify the rates charged respectively. Does the competition set up by the appellees as existing by water between Chicago and the North Atlantic ports, and the competition by rail between Memphis and Charleston, as also the competition of market with market, constitute substantial dissimilar circumstances and conditions, within the meaning of the said fourth section of the act to regulate commerce? Did such competition in fact affect rates between Chicago, the North Atlantic ports, and Charleston? We are of the opinion that it was not of controlling force; that it was not such effectual competition as would constitute the dissimilar circumstances and conditions which would justify the commission, upon application to it, in authorizing the carrier to charge less for the longer than for the shorter haul. We adopt the conclusion heretofore announced by the interstate commerce commission, which is, in substance, that, in order to justify the greater charge for the shorter distance because of water competition, the transportation as to which such competi-

tion exists must be concerning freight to the longer-distance point, which, if not carried to such point by the road giving the rate complained of, could reach that point by water transportation, and also that the competition of one transportation line cannot be said to meet that of another for the carriage of traffic from any particular locality, unless one line could perform the service if the other did not. Such we believe to be the true meaning of said fourth section, so far as the point we are now considering is involved. We are also of opinion that the competition claimed by the appellees to exist between the different markets—particularly those of .Memphis, Chicago, and the North Atlantic ports—to supply the trade of Charleston in the products mentioned is not in reality the competition that affects rates from a particular locality, but is one that is regulated by the commercial circumstances existing at those points, applicable to business of that character, and not connected with the usual conditions under which transportation is conducted; nor does such competition, in our judgment, create the dissimilar circumstances and conditions referred to in the fourth section of the act now under consideration. And we further hold that competition between carriers subject to the requirements of said act does not produce such substantial dissimilarity in the circumstances and conditions under which transportation is performed as will justify such carriers in making a greater charge for the shorter than for the longer haul without an order to that effect from the commission, granted by it as provided for in the proviso to the fourth section. It is fair to presume that, if the facts in any given case justify departure from this rule, the commission will, on a proper showing, grant the relief asked for, and make such exceptions as the circumstances suggest as proper, and justice to the carrier as well as the shipper demands. If the carriers were permitted to determine such questions, the conflicting results produced by opposing interests would not only cause confusion, but work great injury in many cases to the shippers, to localities, and also to certain lines of business that would be affected thereby. If the competition of markets or of carrying lines subject to the provisions of the commerce act justifies carriers in making greater short-haul and lower long-haul charges over the same line, without an order from the commission, issued after due investigation, then the unjust rates for transportation existing when that law was enacted, and which it was intended should be prohibited by it, will continue to be imposed and collected; and schedules will be made, announced, and maintained, to the prejudice of some localities and in favor of others, to the destruction of some shippers and to the profit of others. This statute was intended to prevent any and all kinds of discrimination in favor of localities, individuals, or corporations, and to put all shippers on the same footing,—that of perfect equality.

The rate from Memphis to Charleston on hay and grain and like products is reasonable, and is shown by the evidence to be remunerative. It is fair to presume that it would not have been made by the railroads unless those controlling them were satisfied that it would be so; and consequently, to justify the higher charge for

the shorter haul to Summerville, which we have found was made under substantially similar circumstances and conditions, the commission, after application to it for that purpose, must find certain reasons for the same, after due investigation, that may in fact exist, but which, we are compelled to say, are not now disclosed by the record before us. In the light of the act to regulate commerce, and keeping in view the theory upon which it was constructed, it is not difficult to understand why application was not made to the commission for permission to charge less for the longer haul to Charleston than for the shorter haul to Summerville, when the rate proposed was 19 cents per 100 pounds for the longer and 28 cents per 100 pounds for the shorter. The appellees contend that the smaller charge for the greater distance is in this case of great importance to the city of Charleston, as well as to the section of country adjacent thereto, as by means thereof the merchants of that city are enabled to build up a trade that otherwise would be lost to them. That may be true, but is not the same argument applicable to Summerville and other interior cities along the lines of the roads operated by the appellees between Charleston and Memphis? In order to build up one locality, we should not tear down many others, and justice to one section should not be purchased at the expense of another. It should be kept in mind that the petitioner does not ask that the rate from Memphis to Charleston be changed,—that it shall be made less, and consequently unremunerative, or increased, and thereby cause the loss of the traffic,—but only that the rate from Memphis to Summerville shall not be greater than the rate to Charleston. Finding the facts to be as above indicated,—substantially as found by the interstate commerce commission in the proceedings instituted before it by the appellant,—and construing the law as we do, it follows that the order issued by said commission to the appellees was a lawful order, of which they had due notice, and which it was and is their duty to obey and respect.

We do not find it necessary to consider and dispose of the questions raised in the pleadings, and argued by counsel, concerning the Southern Railway & Steamship Association, nor the matter of the added local charge of nine cents from Charleston to Summerville, otherwise than it may be involved in the through rate to Summerville.

The decree of the court below dismissing the bill is reversed, and this cause is remanded to said court, with instructions to enter a decree herein requiring the appellees, and each of them, to desist from charging, demanding, collecting, or receiving any greater compensation in the aggregate for the transportation of hay or other commodities carried by them, under circumstances and conditions similar to those set out in the petition filed in this cause, from Memphis, in the state of Tennessee, to Summerville, in the state of South Carolina, than that contemporaneously charged and received for the transportation of hay and other commodities, respectively, for the longer distance from Memphis aforesaid, to Charleston, in the state of South Carolina. Said court will also see that the requirements of said decree are immediately carried into effect and en-

forced as provided for in said act to regulate commerce, and will further direct that the appellees pay all costs of this proceeding, and in addition thereto such reasonable fee to the appellant's counsel as that court may, under the circumstances of this case, think proper and just. Reversed and remanded.

MORRIS, District Judge (dissenting). I am unable to join in the order reversing the decree of the circuit court, which it is proposed to pass in this case, and will very briefly state my reasons:

Behlmer, in his petition to the commission, complained that he was charged as freight on two car loads of hay from Memphis to Summerville at the rate of 28 cents per 100, while the rate over the same roads to Charleston, 22 miles further, was only 19 cents. This, he alleged, was a violation of the fourth section of the interstate commerce act. He further complained that the 9 cents additional per 100 charged to Summerville was based on the local rate for 22 miles from Charleston back to Summerville over the South Carolina Railroad, which itself, he alleged, was excessive and unreasonable; and he further alleged that the combined rate of 28 cents from Memphis to Charleston was excessive and unreasonable, and in violation of the first section of the act. The defendants answered, alleging that there were eight all-rail routes which were competitors for the business from Memphis to Charleston; that there was, besides, existing water competition from ports on the Atlantic Coast to Charleston; and that the rate from Memphis to Charleston of 19 cents per 100 was forced upon the defendant lines by this rail and water competition which they had to meet at Charleston, but which the South Carolina Railroad did not have to meet at Summerville; and that rates which were just and reasonable to Summerville would result in the loss of the business, if charged to Charleston. The commission considered only the allegation that the defendants violated the long and short haul clause, and, in view of their decision on that point, deemed it unnecessary to consider whether any other provision of the law had been violated. In the decision of the commission appears the following:

"There is no showing in this proceeding of competition by lines not subject to the act to regulate commerce for the carriage of hay from Memphis to Charleston, and the fact that there may be competition for such traffic by lines which are subject to the act, or that hay may be carried to Charleston by various rail and water, or part-rail and part-water, routes, from points other than Memphis, does not justify the defendant carriers in departing from the general rule of the fourth section upon their own motion. Such considerations may constitute reasons for applying to the commission for relief under the proviso clause of that section, but, for the reasons stated in our decisions of the cases above cited, they do not justify carriers in departing from the rule of the fourth section without such relieving order. Water competition, to justify lower long-haul rates, must exist between the point of shipment and the longer-distance destination. One transportation line cannot be said to meet the competition of another transportation line for the carrying trade of any particular locality unless the latter line could and would perform the service alone if the former did not undertake it. The competition of markets or the competition of carrying lines subject to regulation under the act to regulate commerce does not justify carriers in making greater short-haul or lower long-haul charges over the same line without an order issued by the commission on application therefor after investigation."

The decision then quotes the rule of practice of the commission with reference to applications under the proviso of the fourth section, and then proceeds:

"Because Charleston is an important seaport and railroad center, and hay may be and is carried there from various points, is not a sufficient reason for a departure from this rule. The just interests of the carrier are fully protected by the proviso clause of the fourth section. The defendants are under no obligation to compete at low rates for the carriage of hay from Memphis to Charleston. They ought not to engage in such competition if the rates obtainable are not remunerative. If they are remunerative, the defendants cannot, in the face of the prohibition of the fourth section, and the provision in that section for the issuance of relieving orders, assume to say that such rates, though profitable on Charleston traffic, are insufficient for the transportation of car-load quantities to a shorter point on the same line, and in the same direction."

There was no finding of fact by the commission other than is contained in the foregoing extract from its decision, and it is obvious that the commission did not pass upon the question of the dissimilarity of the circumstances and conditions, nor upon the question whether the rate for the shorter haul was of itself reasonable and just. They took the law to be that, by charging a greater rate for the shorter haul over the same line, the carriers were prima facie without justification, and that they could only be permitted lawfully to make the charge after they had been authorized upon application to the commission under the proviso of the fourth section. One of the cases cited by the commission in support of this proposition of law is the decision of the circuit court of appeals in Interstate Commerce Commission v. Cincinnati, N. O. & T. P. Ry. Co., 9 C. C. A. 689, now known as the "Social Circle Case." The supreme court, in reviewing that case (162 U. S. 184–194, 16 Sup. Ct. 700), did not approve such a hard and fast rule, but held in that case that as the commission had found as a fact that the circumstances and conditions were not so dissimilar as to justify the rates charged, and as the circuit court of appeals had approved that finding, the supreme court would not disturb it. But in the case known as the "Import Case," 162 U. S. 197, 16 Sup. Ct. 666, the supreme court held, in deciding a similar question, that it was error for the commission not to consider an existing competition which affected rates, and the fact that rates had to be reduced in order to secure freight, which otherwise would go by other routes, was one of the circumstances and conditions which must be considered before substantial similarity could be determined. It may be fairly said, therefore, that the commission failed to consider one of the circumstances without which it could not arrive at a just finding. Texas & P. R. Co. v. Interstate Commerce Commission, 162 U. S. 197–238, 16 Sup. Ct. 666; Interstate Commerce Commission v. Alabama Midland Ry. Co., 21 C. C. A. 51, 74 Fed. 715; Interstate Commerce Commission v. Louisville & N. R. Co., 73 Fed. 409. It was error, I think, for the commission to hold that the carriers could not justify themselves because they had not first made application for relief under the proviso of the fourth section. It has been held that, if the carrier can show that the circumstances and conditions of the two hauls are dissimilar, the statute

has not been violated. Interstate Commerce Commission v. Atchison, T. & S. F. R. Co., 50 Fed. 295. And this seems a reasonable construction of the law. The case, therefore, it appears to me, came into the circuit court without any finding of fact upon which an order against the carriers could be predicated. The circuit judge examined the testimony, and considered the evidence tending to prove that the through rate had been forced down by the natural advantages of Charleston as a trade center, having numerous routes by rail, by rail and water, and by water over which merchandise of the kind in question was brought to that city, and to compete with which the defendant carriers were obliged to reduce their railroad rates on through freight to Charleston. Summerville had no similar natural or artificial advantages, and its only carrier, the South Carolina & Georgia Railroad, was not subject to having its local rates forced down by competition below what was reasonable and just. Upon consideration of all the proven facts, the circuit judge found that the circumstances and conditions were not substantially similar, and that the defendant carriers had not violated the act. With this conclusion I agree. There is abundant proof to support it, and also to show the destructive loss which would result to the South Carolina & Georgia Railroad (the successor of the South Carolina Railroad) if it was required to conform its local rates to its share of the through rates.