162 U.S. 184 (1896)
CINCINNATI, NEW ORLEANS AND TEXAS PACIFIC RAILWAY COMPANY
v.
INTERSTATE COMMERCE COMMISSION.
INTERSTATE COMMERCE COMMISSION
v.
CINCINNATI, NEW ORLEANS AND TEXAS PACIFIC RAILWAY COMPANY.
Nos. 394, 473.
Supreme Court of United States.
Argued January 30, 31, 1896.
Decided March 30, 1896.
APPEALS FROM THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.
*188 Mr. N.J. Hammond and Mr. George F. Edmunds for the Interstate Commerce Commission.
Mr. Edward Baxter for the railway companies. Mr. Edward Colston, Mr. George Hoadly, Jr., Mr. J.B. Cumming and Mr. George Hilyer were on his brief.
MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.
The investigation before the Interstate Commerce Commission resulted in an order in the following terms:
"It is ordered and adjudged that the defendants, the Cincinnati, New Orleans and Texas Pacific Railway Company, the Western and Atlantic Railroad Company and the Georgia Railroad Company, do, upon and after the 20th day of July, 1891, wholly cease and desist from charging or receiving any greater compensation in the aggregate for the transportation in less than carloads of buggies, carriages and other articles classified by them as freight of the first class, for the shorter distance over the line formed by their several railroads from Cincinnati, in the State of Ohio, to Social Circle, in the State of Georgia, than they charge or receive for the transportation of said articles in less than carloads for the longer distance over the same line from Cincinnati aforesaid to Augusta, in the State of Georgia; and that the said defendants, the Cincinnati, New Orleans and Texas Pacific Railway Company, do also, from and after the 20th day of July, 1891, wholly cease and desist from charging or receiving any greater aggregate compensation for the transportation of buggies, carriages and other first class articles in less than carloads, from Cincinnati aforesaid to Atlanta, in the State of Georgia, than one dollar per hundred pounds."
The decree of the Circuit Court of Appeals, omitting unimportant details, was as follows:
"It is ordered, adjudged and decreed ... that this cause be remanded to the Circuit Court, with instructions to enter a decree in favor of the complainant, the Interstate *189 Commerce Commission, and against the defendants, the Cincinnati, New Orleans and Texas Pacific Railway Company, the Western and Atlantic Railroad Company and the Georgia Railroad Company, commanding and restraining the said defendants, their officers, servants and attorneys, to cease and desist from making any greater charge in the aggregate on buggies, carriages and on all other freight of the first class carried in less than carloads from Cincinnati to Social Circle than they charge on such freight from Cincinnati to Augusta; that they so desist and refrain within five days after the entry of the decree, and in case they or any of them shall fail to obey said order, condemning the said defendants and each of them to pay one hundred dollars a day for every day thereafter they shall so fail; and denying the relief prayed for in relation to charges on like freight from Cincinnati to Atlanta."
It will be observed that, in its said decree, the Circuit Court of Appeals adopted that portion of the order of the Commission which commanded the defendants to make no greater charge on freight carried to Social Circle than on like freight carried to Augusta, and disapproved and annulled that portion which commanded the Cincinnati, New Orleans and Texas Pacific Railway Company and the Western and Atlantic Railroad Company to desist from charging for the transportation of freight of like character from Cincinnati to Atlanta more than one dollar per hundred pounds.
The railroad companies, in their appeal, complain of the decree of the Circuit Court of Appeals in so far as it affirmed that portion of the order of the Commission which affected the rates charged to Social Circle. The Commission in its appeal complains of the decree in that it denies the relief prayed for in relation to charges on freight from Cincinnati to Atlanta.
The first question that we have to consider is whether the defendants, in transporting property from Cincinnati to Social Circle, are engaged in such transportation "under a common control, management or arrangement for a continuous carriage or shipment" within the meaning of that language, as used in the act to regulate commerce.
*190 We do not understand the defendants to contend that the arrangement whereby they carry commodities from Cincinnati to Atlanta and to Augusta at through rates which differ in the aggregate from the aggregate of the local rates between the same points, and which through rates are apportioned between them in such a way that each receives a less sum than their respective local rates, does not bring them within the provisions of the statute. What they do claim is that, as the charge to Social Circle, being $1.37 per hundred pounds, is made up of a joint rate between Cincinnati and Atlanta, amounting to $1.07 per hundred pounds, and 30 cents between Atlanta and Social Circle, and as the $1.07 for carrying the goods to Atlanta is divided between the Cincinnati, New Orleans and Texas Pacific and the Western and Atlantic, 75 1/10 cents to the former and 31 1/10 cents to the latter, and the remaining 30 cents, being the amount of the regular local rate, goes to the Georgia company, such a method of carrying freight from Cincinnati to Social Circle and of apportioning the money earned, is not a transportation of property between those points "under a common control, management or arrangement for a continuous carriage or shipment."
Put in another way, the argument is that, as the Georgia Railroad Company is a corporation of the State of Georgia, and as its road lies wholly within that State, and as it exacts and receives its regular local rate for the transportation to Social Circle, such company is not, as to freight so carried, within the scope of the act of Congress.
It is, no doubt, true that, under the very terms of the act, its provisions do not apply to the transportation of passengers or property, or to the receiving, delivering, storage or handling of property, wholly within one State, not shipped to or from a foreign country from or to any State or Territory.
In the answer filed by the so-called "Georgia Railroad Company" in the proceedings before the Commission there was the following allegation: "This respondent says that while no arrangement exists for a through bill of lading from Cincinnati to Social Circle, as a matter of fact the shipment from Cincinnati to Social Circle by the petitioner was made *191 on a through bill of lading, the rate of which was fixed by adding this respondent's local rate, from Atlanta to Social Circle, to the through rate from Cincinnati to Atlanta."
The answer of the Louisville and Nashville Railroad Company and Central Railroad and Banking Company of Georgia, which companies, as operating the Georgia railroads, were sued by the name of the "Georgia Railroad Company," in the Circuit Court of the United States, contained the following statement:
"So far as these respondents are concerned they will state that on July 3, 1891, E.R. Dorsey, general freight agent of said Georgia Railroad Company, issued a circular to its connections earnestly requesting them that thereafter, in issuing bills of lading to local stations on the Georgia railroad, no rates be inserted east of Atlanta, except to Athens, Gainesville, Washington, Milledgeville, Augusta or points beyond. Neither before nor since the date of said circular have these respondents, operating said Georgia railroad, been in any way parties to such through rates, if any, as may have been quoted, from Cincinnati or other western points to any of the strictly local stations on said Georgia railroad. The stations excepted in said circular are not strictly local stations. Both before and since the date of said circular respondents have received at Atlanta eastbound freight destined to strictly local stations on the Georgia railroad and have charged full local rates to such stations  said rates being such as they were authorized to charge by the Georgia railroad commission. Said rates are reasonably low and are charged to all persons alike without discrimination."
Upon this part of the case the conclusion of the Circuit Court was that the traffic from Cincinnati to Social Circle, in issue as to the Georgia Railroad Company, was local, and that that company was not, on the facts presented, made a party to a joint or common arrangement such as make the traffic to Social Circle subject to the control of the Interstate Commerce Commission.
We are unable to accept this conclusion. It may be true that the "Georgia Railroad Company," as a corporation of the *192 State of Georgia, and whose entire road is within that State, may not be legally compelled to submit itself to the provisions of the act of Congress, even when carrying, between points in Georgia, freight that has been brought from another State. It may be that if, in the present case, the goods of the James and Mayer Buggy Company had reached Atlanta, and there and then, for the first time, and independently of any existing arrangement with the railroad companies that had transported them thither, the Georgia Railroad Company was asked to transport them, whether to Augusta or to Social Circle, that company could undertake such transportation free from the control of any supervision except that of the State of Georgia. But when the Georgia Railroad Company enters into the carriage of foreign freight, by agreeing to receive the goods by virtue of foreign through bills of lading, and to participate in through rates and charges, it thereby becomes part of a continuous line, not made by a consolidation with the foreign companies, but made by an arrangement for the continuous carriage or shipment from one State to another, and thus becomes amenable to the Federal act, in respect to such interstate commerce. We do not perceive that the Georgia Railroad Company escaped from the supervision of the Commission, by requesting the foreign companies not to name or fix any rates for that part of the transportation which took place in the State of Georgia when the goods were shipped to local points on its road. It still left its arrangement to stand with respect to its terminus at Augusta and to other designated points. Having elected to enter into the carriage of interstate freights and thus subjected itself to the control of the Commission, it would not be competent for the company to limit that control, in respect to foreign traffic, to certain points on its road and exclude other points.
The Circuit Court sought to fortify its position in this regard by citing the opinion of Mr. Justice Brewer in the case of Chicago & Northwestern Railroad v. Osborne, 10 U.S. App. 430, when that case was before the United States Circuit Court of Appeals for the Eighth Circuit. It is quite true that the opinion was expressed that railroad companies, incorporated *193 by and doing business wholly within one State, cannot be compelled to agree to a common control, management or arrangement with connecting companies, and thus be deprived of its rights and powers as to rates on its own road. It was also said that it did not follow that, even if such a state corporation did agree to form a continuous line for carrying foreign freight at a through rate, it was thereby prevented from charging its ordinary local rates for domestic traffic originating within the State.
Thus understood, there is nothing in that case which we need disagree with in disapproving the Circuit Court's view in the present case. All we wish to be understood to hold is, that when goods shipped under a through bill of lading, from a point in one State to a point in another, are received in transit by a state common carrier, under a conventional division of the charges, such carrier must be deemed to have subjected its road to an arrangement for a continuous carriage or shipment within the meaning of the act to regulate commerce. When we speak of a through bill of lading we are referring to the usual method in use by connecting companies, and must not be understood to imply that a common control, management or arrangement might not be otherwise manifested.
Subject, then, as we hold the Georgia Railroad Company is, under the facts found, to the provisions of the act to regulate commerce, in respect to its interstate freight, it follows, as we think, that it was within the jurisdiction of the Commission to consider whether the said company, in charging a higher rate for a shorter than for a longer distance over the same line, in the same direction, the shorter being included within the longer distance, was or was not transporting property, in transit between States, under "substantially similar circumstances and conditions."
We do not say that, under no circumstances and conditions, would it be lawful, when engaged in the transportation of foreign freight, for a carrier to charge more for a shorter than a longer distance on its own line, but it is for the tribunal appointed to enforce the provisions of the statute, whether the Commission or the court, to consider whether the existing *194 circumstances and conditions were or were not substantially similar.
It has been forcibly argued that, in the present case, the Commission did not give due weight to the facts that tended to show that the circumstances and conditions were so dissimilar as to justify the rates charged. But the question was one of fact, peculiarly within the province of the Commission, whose conclusions have been accepted and approved by the Circuit Court of Appeals, and we find nothing in the record to make it our duty to draw a different conclusion.
We understand the record as disclosing that the Commission, in view of the circumstances and conditions in which the defendants were operating, did not disturb the rates agreed upon whereby the same charge was made to Augusta as to Atlanta, a less distant point. Some observations made by the Commission in its report on the nature of the circumstances and conditions which would justify a greater charge for the shorter distance, gave occasion for an interesting discussion by the respective counsel. But it is not necessary for us, in the present case, to express any opinion on a subject so full of difficulty.
These views lead to an affirmance of the decree of the Circuit Court of Appeals, in so far as the appeal of the defendant companies is concerned; and we are brought to a consideration of the appeal by the Interstate Commerce Commission.
That appeal presents the question whether the Circuit Court of Appeals erred in its holding in respect to the action of the Interstate Commerce Commission in fixing a maximum rate of charges for the transportation of freight of the first class in less than carloads from Cincinnati to Atlanta.
This question may be regarded as twofold, and is so presented in the assignment of error filed on behalf of the Commission, namely: Did the court err in not holding that, in point of law, the Interstate Commerce Commission had power to fix a maximum rate, and, if such power existed, did the court err in not holding that the evidence justified the rate fixed by the Commission and not decreeing accordingly?
It is stated by the Commission, in its report, that "the only testimony offered or heard as to the reasonableness of the rate *195 to Atlanta in question was that of the vice president of the Cincinnati, New Orleans and Texas Pacific Company, whose deposition was taken at the instance of the company." And in acting upon the subject, the Commission say:
"This statement or estimate of the rate from Cincinnati to Atlanta, ($1.01 per hundred pounds in less than carloads,) we believe is fully as high as it may reasonably be, if not higher than it should be, but without more thorough investigation than it is now practicable to make we do not feel justified in determining upon a more moderate rate than $1 per hundred pounds of first class freight in less than carloads. The rate on this freight from Cincinnati to Birmingham, Alabama, is 89 cents as compared with $1.07 to Atlanta, the distances being substantially the same. There is apparently nothing in the nature and character of the service to justify such difference, or in fact to warrant any substantial variance in the Atlanta and Birmingham rate from Cincinnati."
But when the Commission filed its petition in the Circuit Court of the United States, seeking to enforce compliance with the rate of one dollar per hundred pounds, as fixed by the Commission, the railroad companies, in their answers, alleged that, "the rate charged to Atlanta, namely $1.07 per hundred pounds, was fixed by active competition between various transportation lines, and was reasonably low."
Under this issue evidence was taken, and we learn, from the opinion of the Circuit Court, that, as to the rate to Birmingham, there was evidence before the court which evidently was not before the Commission, namely, that the rate from Cincinnati to Birmingham, which seems previously to have been $1.08, was forced down to 89 cents by the building of the Kansas City, Memphis and Birmingham Railroad, which new road caused the establishment of a rate of 75 cents from Memphis to Birmingham, and by reason of water route to the Northwest such competition was brought about that the present rate of 89 cents from Cincinnati to Birmingham was the result.
Without stating the reasoning of the Circuit Court, which will be found in the report of the case in 64 Fed. Rep. 981, the conclusion reached was that the evidence offered in that court *196 was sufficient to overcome any prima facie case that may have been made by the findings of the Commission, and that the rate complained of was not unreasonable.
As already stated, the Circuit Court of Appeals adopted the views of the Circuit Court, in respect to the reasonableness of the rate charged on first class freight carried on defendants' line from Cincinnati to Atlanta; and as both courts found the existing rates to have been reasonable, we do not feel disposed to review their finding on that matter of fact.
We think this a proper occasion to express disapproval of such a method of procedure on the part of the railroad companies as should lead them to withhold the larger part of their evidence from the Commission, and first adduce it in the Circuit Court. The Commission is an administrative board, and the courts are only to be resorted to when the Commission prefers to enforce the provisions of the statute by a direct proceeding in the court, or when the orders of the Commission have been disregarded. The theory of the act evidently is, as shown by the provision that the findings of the Commission shall be regarded as prima facie evidence, that the facts of the case are to be disclosed before the Commission. We do not mean, of course, that either party, in a trial in the court, is to be restricted to the evidence that was before the Commission. but that the purposes of the act call for a full inquiry by the Commission into all the circumstances and conditions pertinent to the questions involved.
Whether Congress intended to confer upon the Interstate Commerce Commission the power to itself fix rates, was mooted in the courts below, and is discussed in the briefs of counsel.
We do not find any provision of the act that expressly, or by necessary implication, confers such a power.
It is argued on behalf of the Commission that the power to pass upon the reasonableness of existing rates implies a right to prescribe rates. This is not necessarily so. The reasonableness of the rate, in a given case, depends on the facts, and the function of the Commission is to consider these facts and give them their proper weight. If the Commission, instead of *197 withholding judgment in such a matter until an issue shall be made and the facts found, itself fixes a rate, that rate is prejudged by the Commission to be reasonable.
We prefer to adopt the view expressed by the late Justice Jackson, when Circuit Judge, in the case of the Interstate Commerce Commission v. Baltimore & Ohio Railroad Co., 43 Fed. Rep. 37, and whose judgment was affirmed by this court, 145 U.S. 263:
"Subject to the two leading prohibitions that their charges shall not be unjust or unreasonable, and that they shall not unjustly discriminate, so as to give undue preference or disadvantage to persons or traffic similarly circumstanced, the act to regulate commerce leaves common carriers as they were at the common law, free to make special contracts looking to the increase of their business, to classify their traffic, to adjust and apportion their rates so as to meet the necessities of commerce, and generally to manage their important interests upon the same principles which are regarded as sound, and adopted in other trades and pursuits."
The decree of the Circuit Court of Appeals is
Affirmed.