INTERSTATE COMMERCE COMMISSION v. CINCINNATI, N. O. & T. P. RY. CO. et al.

(Circuit Court, S. D. Ohio, W. D.  October 8, 1896.)

1. **THE RIGHT TO PRESCRIBE MAXIMUM RATES FOR THE TRANSPORTATION OF FREIGHT.**

   The right to prescribe maximum rates for the transportation of freight is the right to dictate an indispensable and one of the most important terms of the contract between the carrier and the shipper.

2. **SAME.**

   As a legislative right it has been so long and so generally recognized as to be beyond question, and it results from the corporate existence of the common carrier, or from his quasi public relation to any and all who may come to him as freighters or passengers.

3. **SAME.**

   It can hardly be said to be within the recognized limits of the exercise of judicial right or power, because, while a court of equity may enforce specific performance of a contract, or correct mutual mistakes in it, it never makes a contract.

4. **THE INTERSTATE COMMERCE COMMISSION.**

   The interstate commerce commission is not invested, and cannot be invested, under the constitution, with either legislative power or purely judicial power. Its functions are necessarily restricted to the performance of administrative duties, with such quasi judicial powers as are incidental and necessary to the proper performance of those duties.

5. **SAME—RIGHT OF THE COMMISSION TO FIX RATES.**

   It is not an incidental right. It is not a right or power to be derived by implication or construction from general phrases in the first or other sections of the act to regulate commerce, nor can it be imported into the act by reference to or by reason of the necessities of the case. If found at all, it must be found in express and specific language, among the powers and rights granted in direct terms, and there is no such language in the act.

6. **SAME.**

   The power of the commission to fix rates was denied by the supreme court in Cincinnati, N. O. & T. P. Ry. Co. v. Interstate Commerce Commission, 162 U. S. 196, 16 Sup. Ct. 700.

7. **THE ACT TO REGULATE COMMERCE.**

   Subject to the two leading prohibitions that their charges shall not be unjust or unreasonable, and that they shall not unjustly discriminate, so as to give undue preference or disadvantage to persons or traffic similarly circumstanced, the act to regulate commerce leaves common carriers, as they were at the common law, free to make special contracts looking to the increase of their business, to classify their traffic, to adjust and apportion their rates so as to meet the necessities of commerce, and, generally, to manage their important interests upon the same principles which are regarded as sound, and adopted in other trades and pursuits.

8. **CASES CITED.**

   Cincinnati, N. O. & T. P. Ry. Co. v. Interstate Commerce Commission, 162 U. S. 184–197, 16 Sup. Ct. 700; Texas & Pac. Ry. Co. v. Interstate Commerce Commission, 162 U. S. 197–255, 16 Sup. Ct. 666; Interstate Commerce Commission v. Louisville & N. R. Co., 73 Fed. 409–429; Interstate Commerce Commission v. Northeastern R. Co., 74 Fed. 70–73; Interstate Commerce Commission v. Alabama Midland Ry. Co., 69 Fed. 227–233, 74 Fed. 715–723; Interstate Commerce Commission v. Lehigh Val. R. Co., 74 Fed. 784–788.

(Syllabus by the Court.)

Harlan Cleveland, L. A. Shaver, and Geo. F. Edmunds, for complainant.

Edward Baxter, Harmon, Colston, Goldsmith & Hoadly, Geo. P. Harrison, East & Fogg, J. D. De Bow, Dorsey, Brewster & Howell, W. H. Henderson, Leigh R. Watts, and Lawton & Cunningham, for respondents.

SAGE, District Judge.    The right of the interstate commerce commission to prescribe maximum rates for the transportation of freight was assumed by the commission, is contended for by their counsel, and is essential to their case.    It is the right to dictate an indispensable and one of the most important terms of the contract between the carrier and the shipper.    As a legislative right, so long and so generally recognized as to be beyond question, it results from the corporate existence of the common carrier, or from his quasi public relation to any and all who may come to him as freighters or passengers, and it is generally limited to fixing maximum rates, although, doubtless, it might be extended to include—what is probably as important—minimum rates.    It can hardly be said to be within the recognized limits of the exercise of judicial right or power, because, while a court of equity may enforce specific performance of a contract, or rescind it, or correct mutual mistakes in it, it never makes a contract.    The interstate commerce commission is not invested, and cannot be invested, under the constitution, with either legislative power or purely judicial power.    Its functions are necessarily restricted to the performance of administrative duties, with such quasi judicial powers as are incidental and necessary to the proper performance of those duties.    This is a proposition which does not in the slightest depend upon the eminence, morally, socially, intellectually, or officially, of the individual members of the commission, which was emphasized in the argument.    The right claimed is not an incidental right.    It is not a right or power to be derived by implication or by construction from general phrases in the first or other sections of the act, nor can it be imported into the act by reference to or by reason of the necessities of the case.    If found at all, it must be found in express and specific language, among the powers and rights granted in direct terms, and there is no such language in the act.

The power of the commission to fix rates was denied by the supreme court in Cincinnati, N. O. & T. P. Ry. Co. v. Interstate Commerce Commission, 162 U. S. 196, 16 Sup. Ct. 705, known as the "Social Circle Case."    The supreme court there declared:

"Whether congress intended to confer upon the interstate commerce commission the power to itself fix rates was mooted in the courts below, and is discussed in the briefs of counsel.

"We do not find any provision of the act that expressly or by necessary implication confers such a power.

"It was argued on behalf of the commission that the power to pass upon the reasonableness of existing rates implies a right to prescribe rates. This is not necessarily so. The reasonableness of the rate in a given case depends on the facts, and the function of the commission is to consider these facts,

and give them their proper weight. If the commission, instead of withholding judgment in such a matter until an issue shall be made and the facts found, itself fixes a rate, that rate is prejudged by the commission to be reasonable."

Upon the expression, in the first paragraph quoted above, "the power to itself fix rates," and the expression "itself fixes a rate," in the last paragraph quoted, counsel for the commission contend that the supreme court had in mind the exercise by the commission of a power to fix or prescribe rates in advance of "issue made and a finding of the facts," or, in other words,—as said by the supreme court in Texas & P. Ry. Co. v. Interstate Commerce Commission, 162 U. S. 197, 16 Sup. Ct. 680, known as the "Import Case,"—"a power to do so of its own motion and without a hearing of the parties to be affected." What the supreme court considered in the Import Case was the order of the commission that the inland rate on certain foreign traffic should not be less than the rate on domestic traffic of the same kind; and, as that was then $2.88 per 100 pounds, counsel claimed that the order fixed the rate for the time being at $2.88. They, however, ignore the distinction that there the order in effect only provided that there should be no discrimination in rates against domestic traffic, leaving the railway company at perfect liberty to change rates at pleasure, provided that, if there should be a lowering of rates for the foreign freight, there should be a corresponding reduction as to the domestic freight, and vice versa; while here a fixed maximum rate was prescribed, which could be exceeded only upon subsequent order by the commission. The contention based upon the use by the supreme court of the phrase already quoted is too narrow and technical. That no such limitation upon its opinion was intended is made perfectly plain by the concluding paragraphs, which are immediately after the paragraphs above quoted, and are as follows:

"We prefer to adopt the view expressed by the late Justice Jackson, when circuit judge, in the case of Interstate Commerce Commission v. Baltimore & O. R. Co., 43 Fed. 37, and whose judgment was affirmed by this court. 145 U. S. 263, 12 Sup. Ct. 844:

"Subject to the two leading prohibitions that their charges shall not be unjust or unreasonable, and that they shall not unjustly discriminate, so as to give undue preference or disadvantage to persons or traffic similarly circumstanced, the act to regulate commerce leaves common carriers, as they were at the common law, free to make special contracts looking to the increase of their business, to classify their traffic, to adjust and apportion their rates so as to meet the necessities of commerce, and, generally, to manage their important interests upon the same principles which are regarded as sound and adopted in other trades and pursuits."

This construction of the law has been followed by Judge Clark, in Interstate Commerce Commission v. Louisville & N. R. Co., 73 Fed. 409; by Judge Acheson, in Interstate Commerce Commission v. Lehigh Val. R. Co., 74 Fed. 784–788; by Judge Simonton, in Interstate Commerce Commission v. Northeastern R. Co., 74 Fed. 70; and by Judge Bruce, in Interstate Commerce Commission v. Alabama Midland R. Co., 69 Fed. 227, and 74 Fed. 715–723.

This court adopts the language of Judge Acheson in Interstate Commerce Commission v. Lehigh Val. R. Co., cited above:

"These views of the supreme court decisively show that the interstate commerce commission is not clothed with the power to fix rates which it undertook to exercise in this case."

The Social Circle Case being decisive and controlling, it is not necessary, nor would it be profitable, to enter upon the discussion whether the rates fixed by the commission are reasonable.

The petition will be dismissed, with costs.