UNITED STATES v. CAMDEN IRON WORKS.

(District Court, E. D. Pennsylvania.   January 24, 1907.)

No. 31.

1. INDICTMENT AND INFORMATION — NECESSITY OF INDICTMENT — INFAMOUS CRIMES.

Offenses against the United States punishable by a fine or by imprisonment not in a state prison or penitentiary are not infamous, within the meaning of the fifth constitutional amendment, and any such offense may be prosecuted by information.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Indictment and Information, §§ 9–23.]

2. CARRIERS—INTERSTATE COMMERCE—INFORMATION FOR RECEIVING REBATE.

An information for receiving rebates in violation of Act Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1905, p. 599], on an interstate or foreign shipment made partly by railroad and partly by water, need not expressly aver that the connecting carriers are used under a common control, management, or arrangement for a continuous service, etc., so as to bring them within the terms of Interstate Commerce Law Feb. 4, 1887, c. 104, § 1, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154], where it sets out facts which show that such was the case in respect to the shipment in question.

3. SAME—EVIDENCE.

In a prosecution under Act Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1905, p. 599], for receiving rebates from carriers on an interstate or foreign shipment of property over the lines of more than one carrier, any evidence tending to show that the shipment was made under a through bill of lading or upon a contract for continuous carriage by the several carriers is admissible for the purpose of proving that such carriers were used for the purpose of the shipment under a common control, management, or arrangement for a continuous carriage, and the schedules of rates filed with the Interstate Commerce Commission by the several carriers are admissible for the purpose of showing the lawful rate on such shipment.

4. SAME.

In a prosecution under Act Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1905, p. 599], for receiving rebates on a shipment of property alleged to have been made from Philadelphia, as the initial point, to Winnipeg, in the province of Manitoba, it is immaterial that the shipment in fact originated in Camden, N. J., where the property was lightered across the river to Philadelphia and there delivered to the carriers named in the information.

5. SAME—SCHEDULE OF RATES FILED.

The provision of Act Feb. 19, 1903, c. 708, § 1, 32 Stat. 847 [U. S. Comp. St. Supp. 1905, p. 599], that in a prosecution of a carrier thereunder for giving a rebate any rate filed by it with the Interstate Commerce Commission, or in which it participates, "shall be conclusively deemed to be the legal rate" as against such carrier, its officers, or agents, merely prescribes the effect to be given such rate as evidence against the carrier, and does not affect its admissibility against a shipper who is being tried for receiving a rebate, and in such case it may properly be received as evidence that the carrier giving the alleged rebate was subject to the provisions of the act.

## On Motion in Arrest of Judgment and for a New Trial.

J. Whitaker Thompson, for the United States.

William A. Glasgow, Jr., for defendant.

HOLLAND, District Judge. This is a motion in arrest of judgment and for a new trial on an information charging the defendant with having received a rebate in violation of the provisions of the act of Congress approved February 4, 1887 (24 Stat. 379, c. 104 [U. S. Comp. St. 1901, p. 3154]), entitled "An act to regulate commerce," and the acts amendatory thereto.

First. The case was properly prosecuted by information. Rev. St. § 1022 [U. S. Comp. St. 1901, p. 720], provides:

"All crimes and offenses committed against the provisions of chapter seven, title 'Crimes,' which are not infamous, may be prosecuted either by indictment or by information filed by a district attorney."

This section does not preclude the prosecutions by information of other offenses not infamous (Ex parte Wilson, 114 U. S. 417, 5 Sup. Ct. 935, 29 L. Ed. 89), and infamous crimes referred to in the fifth amendment to the Constitution, in which a presentment or indictment of a grand jury must first be had, are such crimes as may be punished by imprisonment in a state prison or penitentiary. Other offenses, punishable only by fine or by imprisonment not in a state prison or penitentiary, are not infamous crimes, within the meaning of the Constitution and statutes of the United States. Ansbro v. United States, 159 U. S. 695, 16 Sup. Ct. 187, 40 L. Ed. 310; Fitzpatrick v. United States, 178 U. S. 304, 20 Sup. Ct. 944, 44 L. Ed. 1078.

Second. It is urged the information is defective because the Mutual Transit Company is described as a "common carrier by water route to the town of West Superior, in the state of Wisconsin"; but it is not alleged, as is necessary, that the Mutual Transit Company, being a water carrier, is "used under a common control, management, or arrangement for a continuous carriage," etc. While it is true the information does not aver the Mutual Transit Company is used under a common control, management, or arrangement in these words, it does set forth facts which show this water carrier is used under a common arrangement with the railroads, the other common carriers in the transportation of this property; and this is sufficient.

Third. It is incumbent upon the government to show that the Mutual Transit Company, being a water carrier, is a common carrier within the act as to the transportation of this property, and that it carried this property and carried it in accordance with an arrangement with the railroad companies; and in order to do so the prosecuting attorney was permitted to offer in evidence the Mutual Transit Company's station agent's abstract of through freight received from the Baltimore & Ohio Railway Company, those received from the Philadelphia & Reading Railway Company, the account sheets showing a settlement for this freight between the Mutual Transit Company and the railroads showing settlements in accordance with the tariff of rates filed by the railroads, and proofs of payment by the Mutual Transit Company to the railroad companies for the amount of their respective shares of this freight charged in accordance with the joint tariff rates published. Some of these papers involved other accounts between the Mutual Transit Company and the railroad companies; but they were admitted for the purpose of showing the fact that the Mutual Transit Company shipped this freight, and in accordance with an arrangement with the railroad companies for a continuous carriage or shipment.

It has been determined by the Supreme Court that when goods are shipped under a through bill of lading from one point in one state to a point in another, and when such goods are received in transit by a state common carrier under a conventional division of charges, such carrier must be deemed to have subjected its road to an arrangement for a continuous carriage or shipment within the meaning of the act to regulate commerce; and any evidence which tended to prove these goods were shipped on a through bill of lading, or any other through document or writing, from any place in the United States to an ad-

jacent foreign country, upon a contract of continuous shipment by this water company, partly over railroads and partly over its own water route, and such goods were received in transit on this through rating under a conventional division of charges, such water company must be deemed to have subjected its road to an arrangement for a continuous carriage or shipment within the meaning of the act to regulate commerce. For this purpose the evidence was competent, and we do not think that the objections to it raised in the fifth, sixth, seventh, eighth, ninth, and eleventh reasons for a new trial are well taken. Cincinnati, etc., Railway Co. v. Interstate Commerce Commission, 162 U. S. 184, 16 Sup. Ct. 700, 40 L. Ed. 935.

Fourth. The information charges that this defendant received—

"A rebate and concession of and from the full and lawful rates and charges then and before then established and published by the said common carriers, as aforesaid, and filed with the Interstate Commerce Commission, as aforesaid, by the said Baltimore & Ohio Railroad Company, the said Philadelphia & Reading Railway Company, the said Mutual Transit Company, and the said Great Northern Railway Company, and being then and there and at the time aforesaid in full force and effect, to wit, the aggregate rate and charge of forty-nine and one-half cents per hundred pounds."

In order to prove the established and published rate which had been filed with the Interstate Commerce Commission, the government was permitted to offer in evidence the tariff filed by the Baltimore & Ohio Railroad Company and the supplements and amendments thereto, the tariff filed by the Great Northern Railway Company, and the tariff and supplements filed by the Reading Railway Company. It was necessary under the act to prove these allegations, and the evidence offered and admitted was competent for that purpose. The fifth reason, therefore, for a new trial, is overruled.

Fifth. The remaining reasons for a new trial, being 18 in number, are all taken to the charge of the court. They bring practically the entire charge to the jury upon the record. They raise the following questions:

(1) That these iron pipes having been shipped from Camden, in the state of New Jersey, the defendant could not be charged with having taken a rebate on joint tariffs filed and published from Philadelphia, as the initial point, to Winnipeg, as alleged. The information, however, charges Philadelphia as the initial point, and that the pipes were lightered over the river to the point of shipment, which, as the government contends, would be analogous to carting or any method of local transportation from the works to the place of loading on the railway, which I think is the correct view.

(2) All the other questions raised, we think, are fully answered by the charge as a whole, which, after a somewhat patient examination of the law, we think is a correct statement as applied to the facts in this case. It was, however, strongly urged in the argument for a new trial that the court erred in its answer to the jury, when they asked for further instructions, in that the jury were improperly instructed as to the effect of evidence of participation in the rates filed and published. The act provides that:

"Whenever any carrier files with the Interstate Commerce Commission or publishes a particular rate under the provision of the act to regulate commerce or acts amendatory thereto, or participates in any rate so filed or published, that rate as against such carrier, its officers, or agents in any prosecution begun under this act shall be conclusively deemed to be the legal rate, and any departure from such rate, or any offer to depart therefrom, shall be deemed to be an offense under this section of this act." Act Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1905, p. 599].

In a prosecution of a shipper, however, it is urged by counsel for the defense that, because of this provision, evidence of participation on the part of the common carrier who gave the rebate, with the receipt of which the defendant is charged, must be entirely excluded. This we do not think is the proper view. The above provision, quoted from the latter part of section 1 of the Elkins amendment, simply provides the rule as to the effect to be given to evidence of participation when a carrier is being tried for a violation of the act; but it did not in any way affect the admissibility of evidence as to a shipper who is forbidden to receive a rebate under the act. In cases where the shipper is being tried for receiving a rebate, it is necessary to show that the carrier who gave it was at the time subject to the provisions of the act; and in order to do so, in the absence of any express agreement on the part of such carrier to show common control, management, or arrangement for the transportation of property under the rates filed and published, it is necessary for the government to prove such common control, management, or arrangement by any facts and circumstances which would show the carrier giving the rebate was under such control, management, or arrangement at the time; and in order to do that evidence was admissible to show that when such goods were received in transit by the Mutual Transit Company they were received under a conventional division of charges, and, if they were so received, such carrier must be deemed to have subjected its line to an arrangement for a continuous carriage or shipment within the meaning of the act to regulate commerce. Cincinnati, etc., Railway Co. v. Interstate Commerce Commission, 162 U. S. 184, 16 Sup. Ct. 700, 40 L. Ed. 935. So that it would seem to me that evidence of participation on the part of the Mutual Transit Company, in accordance with the tariff rates filed and published, was some evidence, and properly submitted to the jury, upon the question as to whether there was such an arrangement between the railroads and the water company.

The evidence as a whole was uncontradicted, and the defense was technical throughout, excepting as to the question as to whether the amount received by the defendant was a rebate or repayment of an overcharge. The government contended it was a rebate. The defense claimed that it was simply a mistake or overcharge in freight, which was properly returned. This was submitted to the jury, and their verdict establishes the fact that it was a rebate. In fact, I do not see how they could have come to any other conclusion. There was nothing in the evidence to warrant the jury in finding in favor of the defendant's view by the most strained and forced construction that could have been put upon the facts in the case. All the questions

raised by the defendant were properly submitted to the jury, and the verdict of guilty is amply sustained.

The motion in arrest of judgment and for a new trial should be overruled; and it is so ordered.