CASE 71.—ACTION BY FRANK CORCORAN AGAINST THE LOUISVILLE & N. R. R. CO., FOR A CLAIM AND DELIVERY OF CERTAIN SPECIFIC PERSONAL PROPERTY.—May 8.

# Corcoran v. Louisville & Nashville R. R. Co.

Appeal from Marion Circuit Court.

I. H. THURMAN, Circuit Judge.

Judgment     for     defendant.     Plaintiff     appeals. Affirmed.

Commerce—Subjects of Regulation—Transportation of Goods— Charges—Where defendant railway company, which had, in accordance with the federal statutes, published its rate for interstate traffic, and filed this rate with the Interstate Commerce Commission and the State Railroad Commission, joined with other carriers in transporting marble, consigned to plaintiff, from Vermont to Kentucky, the shipment was interstate commerce, and subject to the freight rates fixed for interstate commerce, and not the local rates fixed by the State Railroad Commission, though defendant had no agreement with the initial carriers that it would constitute a part of a through line for interstate commerce from Vermont to Kentucky.

H. W. RIVES for appellant.

POINTS AND AUTHORITIES CITED.

1.  The instruments used by those engaged in interstate com-

Corcoran v. Louisville & Nashville R. R. Co

merce are not necessarily a part of commerce itself, and where such an instrument is situated, and its business exclusively carried on, within one state, that state has the power to regulate its charges.for the service it may render, though such regulation may incidentally affect interstate commerce    (Munn v. Ill., 4 Otto, 113, 154 Law Ed., Book 24, p. 87; C. B. & Q. R. R. Co. v. Cutts, &c., 4 Otto, 155, &c., Law Ed., Book 24, p. 94; Peik, &c., v. Chicago & Northwestern Ry. Co., 4 Otto, 164, Law Ed., Book 24, p. 97.)

2.  The relation of the carrier to the goods he carries, whether as being engaged in interstate or intra-state commerce, is determined alone from his obligations assumed by contract or embraced by law toward the owner of the goods.

3.  No common carrier in one state can be engaged in the business of interstate transportation over the line of another carrier, with which it has no business connection, by contract or arrangement for continuous transportation for a through rate, nor can one carrier be compelled to make any contract or arrangement with another carrier, whether within or outside of its own state. (Chicago & N. W. R. Co. v. Osborne, 52 Fed. Rep., 912; C. N. O. & T. P. R. Co. v. Interstate Commerce Commission, 162 U. S., 184, Law Ed., Book 40, p. 935; L. & N. R. Co. v. Behlmer, 175 C. S., 648, Law Ed., Book 44, p. 309; Hanley v. Kansas City S. R. Co., 187 U. S., 617, Law Ed., Book 47, p. 333.)

W. C. McCHORD and W. W. SPALDING, attorneys for appellee.
T. B. HARRISON, JR., and EDWARD W. HINES, of counsel.

### CLASSIFICATION OF QUESTIONS DISCUSSED.

1.  The Railroad Commission of Kentucky did not attempt to change appellee's published rate for transporting finished monuments from Louisvilee to Lebanon, nor did it attempt to change any rate.

2.  The shipment in controversy was a shipment of interstate commerce, and if the Railroad Commission of Kentucky attempted to change appellee's rate on the shipment of finished monuments, such action on the part of the Commission was without authority, and was void. (The Steamer Daniel Ball v United States, 10 Wallace, 77 U. S., 557, 19 L. Ed., bottom page 999; Coe v. Errol, 116 U. S., 517; Wabash, &c., v. Illinois, 118 U. S., 557; Kidd v. Pearson, 128 U. S., 25; Norfolk, &c., Ry. v. Pennsylvania, 136 U. S., 114; L. & N. R. R. v. Eubank, 184 U. S., 46 L. Ed., bottom page 419; Florida, &c., Ry. v. Cutting, 46 Fed., 641; Hanley v. Railway, 187 U. S., 617, 47 L. Ed., bottom page 355, affirming

Corcoran v. Louisville & Nashville R. R. Co.

. Kansas, &c., Ry. v. Board of Railroad Commissioners. 106 Fed., 253 (and overruling U. S. v. Railroad, 115 Fed., 373; Campbell v. Railroad, 86 Iowa, 587, and Sewel v. Railroad, 119 Mo., 22.)

3.   A carrier cannot charge more or less than the published rate without violating the Interstate Commerce Act. (Gulf, &c., Ry. v. Hefley, 158 U. S., 98, vol. 39 L. Ed.. 910; Texas, &c., v. Mugg, 202 U. S., 242, vol. 50, L. Ed., 1011.)

4.   The procedure to recover excessive freight rates under the common law has been superseded by statutes creating railroad commissioners and providing summary, or other methods for such recovery.   (Winsor Coal Co. v. Chicago, &c.. Ry., 52 Fed., 716, 722; Clafflin v. Houseman, 93 U. S., 130, 23 L. Ed., 333; Cobb v. L. & N. R. Co., 12 L. R. A., 725; Young v. Kansas, &c., 33 Mo., 509; L. & N. R. R. v. Commonwealth, 106 Ky., 643; Van Patten v. Chicago, &c., Ry., 81 Fed , 545.)

5.   If the Railroad Commission had the authority to change the rate, and had attempted to do so, ·the necessary steps to give the Commission jurisdiction were not taken, as required by section 820a, Kentucky Statutes.

6.   The Marion circuit court had no jurisdiction of the subject of the action.   By the Interstate Commerce Act the Federal Court alone has jurisdiction.   (Cobb v. L. & N. R. R. Co., 12 L. R. A., 725; Van Patten v. Chicago, &c., Ry., 81 Fed., 545; Young v. Kansas, &c., Ry., 33 Mo., 509.)

    T. B. HARRISON, JR., for appellee.

1.   The shipment was interstate commerce during every part of its journey.   (Daniel Ball, 10 Wall., 557; Pacific Steamship Co. v. Railroad Commissioners, 18 Fed., 10; Cutting v. Ry. Co., 46 Fed., 641; G. C. & S. F. Ry. Co. v. Grain Co., 72 S W., 419; Porter v. Ry. Co., 95 S. W., 453; C., M. & St. P Ry. Co. v. Voeker, 129 Fed., 522; Hanley v. K. C. Southern, 187 U. S., 617)

2.   The shipment, being interstate commerce, is not subject to State regulation, and the rate charged and collected for the whole or any part of the journey is not subject to regulation by the State of Kentucky or any governmental authority therefor. (Wabash, &c., v. Illinois, 113 U. S., 557; L. & N. v. Eubank, 184 U. S., 27; Ryman Steamboat Line Co. v. Commonwealth; MS. Opinion, Court of Appeals of Kentucky, April 10, 1907.)

·  3.   The courts have no jurisdiction of an action growing out of an alleged extortionate rate until after complaint to, and action thereon by, the Interstate Commerce Commission.   (Swift v. P. & R. R. Co., 58. Fed., 858; Van Patten v. Chicago, &c., R. Co., 74 Fed., 981; Edmunds v. I. C. R. Co., 80 Fed., 79; Sheldon

v. Wabash R. Co., 105 Fed., 785; Carlisle v. M. P. R Co., 68 S. W., 898; T. & P. Ry. Co. v. Abilene Cotton Oil Co., 27 Sup. Ct. Rep., 350; T. & P. Ry. Co. v. Cisco Oil Mill, 27 Sup. Ct, Rep., 358.)

OPINION OF THE COURT BY JUDGE BARKER—Affirming.

The appellant, Frank Corcoran, is a dealer in finished monuments and tombstones in Lebanon, Ky. He purchased of Townsend & Co., of Barre, Vt., a car load of granite monuments, at a cost of over $1,000. The car was delivered to the initial carrier in Vermont by the consignor, Townsend & Co., and consigned to appellant at Lebanon, Ky., at a through rate of 54 cents per 100 pounds. When the car reached Lebanon, where it had been hauled from Louisville by appellee, the Louisville & Nashville Railroad Company, over its line, the railroad corporation demanded of appellant the payment of the freight charges of 54 cents per 100 pounds, which was refused, because, in the division of the freight rate of 54 cents per 100 pounds, the Louisville & Nashville Railroad Company charged 28 cents per 100 pounds, and paid over to the other carriers 26 cents per 100 pounds as their part of the total freight rate. This action on the part of Corcoran was based upon his theory that, because the freight rate on granite monuments from Louisville to Lebanon was fixed by the Railroad Commission of Kentucky at 8 cents per 100 pounds, appellee had no right to charge him a greater rate than this on his shipment. He thereupon refused to pay the amount demanded, but tendered the aggregate sum, which he admitted was due on the whole haul from Barre to Lebanon, computing the Louisville & Nashville Company's part at only 8 cents from

Louisville to Lebanon, and, upon the refusal of the railroad to accept the sum tendered in full of the freight charges, he instituted this action to recover the granite in question, making the ordinary allegations necessary to support an action for the claim and delivery of specific personal property under the Code.

The railroad answered, admitting the title of the property to be in appellant, but claiming a lien upon it for the aggregate of the freight rate of 54 cents per 100 pounds, alleging that the shipment was interstate commerce; that the property had been shipped from Barre, Vt., to Lebanon, Ky., upon a bill of lading at the through rate of 54 cents per 100 pounds, and the Kentucky Railroad Commission had no power or authority to establish rates for interstate commerce; that, before the shipment was made, it had published, as by the federal statute required, its freight rate for interstate commerce from Louisville to Lebanon as 28 cents per 100 pounds for such goods as are involved in this action, and that it had filed this rate with the Interstate Commerce Commission, and also with the Kentucky Railroad Commission.

The plaintiff replied, denying some of the allegations of the answer, and setting forth certain other conclusions of law, but did not deny that the goods were shipped from Barre, Vt., at a through rate of 54 cents per 100 pounds, or that the defendant had published its freight rate of 28 cents per 100 pounds on such goods as are involved in this action, as required by the federal statute, or that it had filed this rate with the Interstate Commerce Commission and with the Kentucky Railroad Commission. His real defense to the railroad's claim, that the shipment was interstate commerce, is set forth in the reply, as fol-

Corcoran v. Louisville & Nashville R. R. Co.

lows: "Plaintiff says that the defendant had no agreement or traffic arrangement with either of the other carriers aforesaid relating to the acceptance of freight delivered by them to it at Louisville, Ky., for transportation to Lebanon, nor relating to the payment to defendant of any part or share of a through rate for interstate transportation of said freight; that the defendant did not, therefore, constitute part of a through line from Barre, Vt., to Lebanon, Ky., but as a common carrier was bound to, and did, accept said granite for transportation over its line from Louisville to Lebanon, Ky., without any contract entered into by it, or by any person or corporation for it, but under the same conditions and responsibilities under which it was required to accept and transport freight offered for transportation to Lebanon, Ky., by any person, firm, or corporation in Louisville, Ky., and for such service it could charge the local rate fixed and approved by the State Railroad Commission, and no more."

A general demurrer was interposed to this reply, and sustained by the court. Whereupon the plaintiff refused to plead further, and his petition was dismissed, from which judgment he is here on appeal.

A careful examination of the pleadings in this case shows that the real question between the parties is one of construction, rather than disputed facts. We do not understand from the pleadings, that the plaintiff denies that the goods were billed by the consignor, Townsend & Co., at Barre, Vt., to him at Lebanon, Ky.; but he does deny that this was a through shipment, or that it was interstate commerce, or that it was shipped under a through bill of lading. He does not deny that it was shipped upon a freight rate of 54 cents per 100 pounds, nor does

he pretend that a greater rate than 54 cents was charged him. His affirmative allegation above quoted shows that his contention is that unless the Louisville & Nashville Railroad Company had an express contract of carriage with the initial carriers, the shipment, so far as it was concerned, was intrastate commerce, and regulated by the local rate fixed by the State Railroad Commmission—8 cents per 100 pounds. Whether this contention is sound is the question arising upon this record for adjudication.

It will not be disputed that, since the opinion by Chief Justice Marshall, in Gibbons v. Ogden, 9 Wheat. (U. S. 1, 6 L. Ed. 23, the exclusive right of the Congress of the United States to regulate interstate commerce has been settled. Upon this point it is not necessary to cite the many opinions of the Supreme Court of the United States delivered since the great case supra. But the appellant insists that the shipment in question is not interstate commerce, although it originated in Vermont, and ended in Kentucky, because, he says, the Louisville & Nashville Railroad Company had no agreement with the initial carriers that it would constitute a part of a through line for interstate commerce from Barre, Vt., to Lebanon, Ky. This deduction does not follow. It is not necessary that a contract should be expressed in words to be valid and binding upon all the parties concerned. When, in accordance with the requirements of the federal statutes, the appellee published its rate for interstate traffic from Louisville to Lebanon, and filed this rate with the Interstate Commerce Commission and the State Railroad Commission, this was notice to all the world that it held itself out as a common carrier of interstate commerce at the published rate; and the initial carrier, in making up the through

freight rate, had this published rate before it, and appellee could not thereafter be heard to say that it had not agreed to accept the shipment as interstate commerce at the published rate. Let us suppose, instead of the local freight rate from Louisville to Lebanon being 8 cents, as fixed by the State Railroad Commission, it had been fixed at $1. Would the Louisville & Nashville Railroad Company after holding itself out as a common carrier of interstate commerce at its published rate of 28 cents per 100 pounds, be heard to say, after receiving the goods and hauling them to Lebanon, that it would charge, not the published interstate rate of 28 cents, but the local rate of $1 per 100 pounds? We think not. The contract of the Louisville & Nashville Railroad Company, with the initial carriers, to haul the freight in question from Louisville to Lebanon as interstate commerce at the published rate of 28 cents, was made just as valid and binding by what took place as if all the terms of the agreement had been formally written out, signed, sealed, and delivered by the contracting parties.

The case of Cincinnati, New Orleans & Texas Pacific Railway Company v. Interstate Commerce Commission, 162 U. S. 184, 16 Sup. Ct. 700, 40 L. Ed. 935, cited by appellant in support of his theory, very conclusively, in our opinion, establishes the contrary principle. There the Georgia Railroad Company, in hauling for the last part of the way freight from Cincinnati, Ohio, to Social Circle, Ga., made a charge which was in contravention of the federal statutes regulating interstate commerce, and proceedings were instituted against it to enforce the statutes. The railroad defended on the ground that the haul in question was intrastate commerce, to which the federal

statutes had no application. On this subject, the supreme court said: "We are unable to accept this conclusion. It may be true that the 'Georgia Railroad Company,' as a corporation of the State of Georgia, and whose entire road is within that State, may not be legally compelled to submit itself to the provisions of the act of Congress, even when carrying, between points in Georgia, freight that has been brought from another State. It may be that if, in the present case, the goods of the James & Mayer Buggy Company had reached Atlanta, and there and then, for the first time, and independently of any existing arrangement with the railroad companies that had transported them thither, the Georgia Railroad Company was asked to transport them, whether to Augusta or to Social Circle, that company could undertake such transportation free from the control of any supervision, except that of the State of Georgia. But when the Georgia Railroad Company enters into the carriage of foreign through bills of lading, and to participate in through rates and charges, it thereby becomes part of a continuous line, not made by a consolidation with the foreign companies, but made by an arrangement for the continuous carriage or shipment from one State to another, and thus becomes amenable to the federal act, in respect to such interstate commerce. We do not perceive that the Georgia Railway Company escaped from the supervision of the commission, by requesting the foreign companies not to name or fix any rates for that part of the transportation which took place in the State of Georgia when the goods were shipped to local points on its road. It still left its arrangement to stand with respect to its terminus at Augusta and to other designated points. Having elected to enter into the carriage of interstate

freights, and thus subjected itself to the control of the commission, it would not be competent for the company to limit that control, in respect to foreign traffic, to certain points on its road and exclude other points.''

The circumstances surrounding the shipment involved herein tend more strongly to prove it to be interstate commerce than were those surrounding the shipment involved in the case cited. The Louisville & Nashville Railroad Company, between Louisville and Lebanon, lies wholly in Kentucky, as the Georgia Railroad Company, between Atlanta and Social Circle, is wholly in the State of Georgia. But the Georgia Railroad Company had requested its interstate tributaries not to make a rate between Atlanta and Social Circle less than its local rate between these points, and tried to avoid being brought within the jurisdiction of the interstate commerce act; while, on the contrary, the Louisville & Nashville Railroad Company invited the making of the interstate rate (54 cents per 100 pounds) by the initial carrier between Barre, Vt., and Lebanon, Ky. received and carried the freight so shipped, and undertook to collect and participate in the enjoyment of the through rate so fixed—it, in fact, did all it could to bring itself under the operation of the federal statutes, except to make an express contract covering the particular shipment. But, as we have seen, an express contract was not necessary. An implied contract may be just as valid as one made in express terms. If the Georgia Railroad Company, under the circumstances involved in its case, could not escape the jurisdiction of the federal statutes, a fortiori, the Louisville & Nashville Railroad Company, under the circumstances above detailed, comes within its jurisdiction in regard to the shipment in question.

If this was a proceeding against the railroad corporation for a violation of the federal statutes regulating interstate commerce, the facts being precisely the same as to the nature of the commerce, the railroad could not successfully defend on the ground that the shipment was intrastate commerce, so far as it was concerned. This being true, it follows that the State law and the State Railroad Commission have no authority to regulate the matter; that power being exclusively in Congress.

For these reasons, the judgment of the circuit court dismissing the petition is affirmed.