UNITED STATES v. NEW YORK CENT. & H. R. R. CO.

(Circuit Court, S. D. New York. December 3, 1907. On Rehearing, December 31, 1907.)

CARRIERS—PROSECUTION FOR GRANTING REBATES—SUFFICIENCY OF INDICTMENT.

Section 1 of the Elkins act of February 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1907, p. 880], sets forth two entirely separate offenses, the first being the failure of a carrier, subject to the provisions of the interstate commerce act, to file and publish the tariffs required by said act or strictly to observe the same, and the second the soliciting, accepting, or receiving by such a carrier of any rebate whereby any property "shall be transported at a less rate than that named in the tariffs published and filed by such carrier." In order to constitute an offense under the second provision, the tariff charged to have been violated must be one published or filed by the defendant charged, and it is not sufficient that in the case involved such defendant participated in a through rate published and filed by another carrier, where it had not itself published or filed it.

On Demurrer to Indictment for Granting Rebates in Violation of the Provision of the Elkins Act.

Austen G. Fox, John D. Lindsay, and Albert H. Harris, for demurrer.

Henry L. Stimson, U. S. Atty., and Henry A. Wise, Asst. U. S. Atty., opposed.

HOUGH, District Judge. The substantial offense charged in the indictment is that pursuant to agreement made in 1898, between a duly accredited agent of the defendant and a similarly accredited agent of the Brooklyn Cooperage Company, certain goods were transported

in 1903 from Poplar Bluffs, Iowa, to New York City at less than the tariff rates; such result being accomplished by an agreement for rebates from the legal tariff, which rebates were paid by the defendant in 1903 and 1904. The goods in question were transported over the lines of several railroads, of which the Missouri-Pacific Railway Company was the initial carrier and the defendant the delivering carrier. After alleging the existence of this transportation arrangement, the indictment states that the "Missouri Pacific Railway Company filed with the Interstate Commerce Commission as required by law, and had published, in accordance with the directions of the Interstate Commerce Commission as provided by law, a joint tariff of rates, fares and charges," i. e., the tariff alleged to have been violated by defendant's act in paying the rebates above referred to. This is the only allegation of the filing or publication of the violated tariff; and it is necessarily inferable therefrom that the defendant never either filed or published the same, although it did participate in the transportation, in the emoluments flowing therefrom, and was the active member of the railroad partnership in the alleged violation of the law. The substantial ground of demurrer is that, because the New York Central road did not either file or publish this tariff, it committed no offense against the statute by paying the rebate agreed upon.

The first section of the Elkins act under which this indictment is brought clearly sets forth two entirely separate offenses. The first is a willful failure to "file and publish the tariffs" or "strictly to observe the same" as required by the interstate commerce act; and the second is ("upon the part of any carrier subject to" the Interstate Commerce Act) "to offer, grant or give * * * any rebate * * * in respect of the transportation of any property in interstate or foreign commerce * * * whereby any such property shall * * * be transported at a less rate than that named in the tariffs published and filed by such carrier as required by" the interstate commerce act. In respect of this second offense, the statute is specific that "every * * * corporation" which shall "give * * * any such rebates * * * shall be deemed guilty of a misdemeanor"; and it is with this misdemeanor defendant is charged. The last portion of the first section of the statute declares that "whenever any carrier files * * * or publishes a particular rate under the provisions of the interstate commerce act, or participates in any rates so filed or published, that rate as against such carrier * * * in any prosecution begun under this act shall be conclusively deemed to be the legal rate, and any departure from such rate * * * shall be deemed to be an offence under this section of this act." The last quotation is no more than a statutory rule of evidence, and does not create any offense new or different from those specifically described and proscribed in the earlier portions of the section. This is, I think, the view taken in United States v. Camden Iron Works (D. C.) 150 Fed. 218. It follows that participation in the rate filed and/or published by the Missouri-Pacific Railway would furnish a conclusive presumption against this defendant, were the indictment based upon an alleged failure either to file the tariff or "strictly to observe" the same. But it does not follow that participation in a filed or published rate renders the

participator liable to indictment for the second offense proscribed by the statute, where the rate violated had been neither filed nor published by the person or corporation proceeded against. The giving of a rebate was only rendered a crime by the statute, which in my opinion limits the offense by plain words to the giving of rebates "whereby any such property (i. e., property in interstate transit) shall by any device whatever be transported at a less rate than that named in the tariffs published and filed by such carrier." The words "such carrier" can only refer to the carrier proceeded against, and unless that carrier filed or published the violated tariff the statute affords no remedy by indictment for the second offense enumerated.

Whether publication without filing would furnish a lawful basis for prosecution need not be considered, as this indictment is specific that both filing and publication were done by the Missouri Pacific Railway only.

Demurrer sustained.

### On Reargument.

That the construction given the first section of the Elkins act in my opinion of December 3, 1907, is the plain and simple meaning of the words used still seems to me clear. The usage of the Interstate Commerce Commission and any latitude of construction in civil actions should not avail in construing an indictment for crime.

Nor am I able to perceive that the interpretation given on December 3, 1907, is at variance with anything decided in the Reichmann Case (C. C.) 145 Fed. 235, nor the Chicago, Burlington & Quincy R. R. Case in the Eighth Circuit, 157 Fed. 830. The latter case is one of a carrier which filed its own tariff and then took goods for transportation under "certain tariffs * * * and joint * * * tariffs"; i. e., its own charges and the joint charge of its connections. All the tariffs being filed, and the act of transporting the goods having made the aggregate of the tariffs the legal rate, the act of the Burlington in granting a concession was a rebate from the through rate of which its own filed tariff was a part.

I find nothing in that indictment or opinion ruling the present cause. It still seems to me plain that this contention revolves around the meaning of the last portion of the first section of the act. The New York Central did participate in a filed and published rate, and it did depart from such rate, and such departure "shall be deemed to be an offense under this section of this act." But what offense, and which offense? Certainly an offense for which both definition and punishment can be found in the same first section, and unless both definition and punishment can be so found the words create an illegality, without any sanction.

It was said to a jury in the Wood Case (D. C.) 145 Fed. 409, that it "may be unlawful for a carrier to give a rebate * * * on a joint tariff in which it participated when published by another." Be it so, but that is not the same thing as declaring the act as a misdemeanor; and, if the court in that case considered that an act unlawful under section 1 was necessarily indictable under the same section, I respectfully differ.

This indictment might be reduced to its lowest terms thus: (a) The Missouri Pacific Railway published and filed a through rate; (b) the New York Central participated therein, and (c) departed therefrom, contrary to the form of the last part of the first section of the Elkins act; therefore (d) it committed the second offense denounced in the first part of the same section.

I believe this is a non sequitur, and adhere to the decision filed.