UNITED STATES v. MELLEN et al.

(District Court, D. Kansas. November 28, 1892.)

No. 3,092.

1. CARRIERS—INTERSTATE COMMERCE ACT—SHORT HAUL CLAUSE—JOINT AND LOCAL RATES.

The long and short haul clause of the interstate commerce act (section 4) does not apply to a case where the short haul rate is the combined local rates of two connecting lines, and the lower long haul rate is a joint rate made by the two lines acting together: and an indictment alleging such rates is bad. Railway Co. v. Osborne, 52 Fed. Rep. 912, followed.

2. SAME.

An indictment alleging that the share of a joint rate taken by one company is less than its local rate for a shorter haul, etc., is bad. Railway Co. v. Osborne, 52 Fed. Rep. 912, followed.

3. SAME.

A count of the indictment wherein Kansas City is named as the point for the joint rate, by a typographical error, instead of Topeka, is bad.

4. SAME—COLLECTING AGENT NOT INDICTABLE.

An agent of a railroad, who merely collects freights, and has nothing to do with fixing them, is not indictable, under the interstate commerce act, for collecting a greater rate for a shorter than for a longer haul, etc.

At Law. Indictment of C. S. Mellen, J. A. Munroe, B. Campbell, J. G. Woodworth, and W. S. Barr, for violation of the interstate commerce act. On motion to quash. Granted in part, and overruled in part.

J. W. Ady, U. S. Atty., and P. L. Soper, Asst. U. S. Atty.

A. L. Williams, for defendant.

RINER, District Judge. The defendants, C. S. Mellen, J. A. Munroe, B. Campbell, J. G. Woodworth, and W. S Barr, were indicted in this court on the 27th day of April, 1892, for violating the provisions of section 4 of the interstate commerce act, by charging more for a short than for a long haul; it being charged in the indictment that the four defendants first named were officers and persons acting for and employed by the Union Pacific Railway Company, and were the officers who had authority to make and establish rates and charges for the transportation of property and freight over the lines of said company, and that W. S. Barr, the last-named defendant, was the agent of said railway company at Salina, Kan., a station on its line 186 miles west of Kansas City, Mo. The case is before the court on a motion to quash.

The first count of the indictment charges that on the 20th of April, 1891, the Union Pacific Railway Company was a common carrier of passengers and property through and among and between the states and territories of the United States, between the city of Ogden, in the territory of Utah, and the city of Kansas City, Mo. It is further alleged in the indictment that upon that day, to wit, the 20th of April, the Union Pacific Railway Company had entered into an agreement and arrangement with the Southern Pacific Railway Company, also a common carrier, (both of which said companies were then and there subject to the provisions of the act of congress entitled "An act to regulate commerce,") establishing a certain joint tariff or rate for the shipment and transportation of refined sugar in car-load lots, by continuous line, upon the railways of the Union Pacific and Southern Pacific from the city of San Francisco, in the state of California, to the city of Kansas City, Mo., and that this joint tariff and rate was in force on the 20th of April, 1891, and that at that time the said joint tariff and charge had been filed with the interstate commerce commission created by the act of congress approved on the 4th day of February, 1887; that the rate and price under said joint tariff was 65 cents for each 100 pounds of sugar, in car-load lots, transported by the Union Pacific and Southern Pacific Companies over their railroads by continuous line and route from San Francisco, Cal., to Kansas City, Mo., and, of the said rate of 65 cents per 100 pounds fixed by said joint rate for the transportation of sugar between the points last mentioned, the Union Pacific received the sum of 32.4 cents per 100 pounds, and the Southern Pacific received 32.6 cents per 100 pounds. It is further charged in the first count of the indictment that the city of Salina, in the district of Kansas, is a station upon the main line of the Union Pacific Railway Company, in Kansas, and is located 186 miles west of Kansas City, Mo., and is a shorter distance from San

Francisco, Cal., by 186 miles, than Kansas City, Mo. The indictment then proceeds to charge the defendants, Mellen, Munroe, Campbell, and Woodworth, (they being officers authorized to fix and establish rates for the Union Pacific,) with willfully establishing a rate of 94 cents for each 100 pounds of refined sugar, in car-load lots, transported over the lines of the Union Pacific and Southern Pacific Railways from San Francisco, Cal., to the city of Salina, Kan., notwithstanding they had fixed a rate of 65 cents per 100 pounds to the city of Kansas City, Mo., which was a greater distance than the distance to Salina. It is further alleged that a shipment was made from San Francisco to the H. D. Lee Mercantile Company, of Salina, Kan., for one car load of sugar, consisting of 76 barrels, for which the rate of 94 cents per 100 pounds was charged, and that said shipment was made under substantially similar circumstances as the shipments made to Kansas City, Mo., and that Barr, as the agent of the company, demanded and collected the said rate, which is alleged to be illegal, and which had been fixed by the four defendants first above named.

The first count of the indictment charges that a joint rate was established, of 65 cents, from San Francisco, Cal., to Kansas City, Mo., said rate being established under an agreement or joint traffic arrangement with the Southern Pacific Company. The question now to be determined is whether or not the fact that they charged a higher rate to Salina, which was a shorter distance, is a violation of section 4 of the act to regulate commerce. The language of the section is:

"It shall be unlawful for any common carrier subject to the provisions of this act to charge or receive any greater compensation, in the aggregate, for the transportation of passengers or of like kind of property, under substantially similar circumstances and conditions, for a shorter than for a longer distance over the same line, in the same direction; the shorter being included within the longer distance."

It will be noted from a careful examination of this section that it applies to each separate common carrier for its violation of the long and short haul clause on its own line. In construing this section, Mr. Justice Brewer, in the case of Railway Co. v. Osborne, 52 Fed. Rep. 912, said:

"Where two companies, owning two connecting lines of road, unite in a joint tariff, they form, for the connected roads, practically a new and independent line. Neither company is bound to adjust its own local tariff to suit the other, nor compellable to make a joint tariff with it. It may insist upon charging its local rates for all transportation over its line. If, therefore, the two companies by agreement make a joint tariff over their lines, or any part of their lines, such joint tariff is not the basis by which the reasonableness of the local tariff of either line is determined. To illustrate: On the defendant's road the distance from Turner to Chicago is 30 miles; on the Lake Shore line, from Chicago to Cleveland is 200 or 300 miles. Defendant company may charge 15 cents for transporting grain the 30 miles from Turner to Chicago, providing that it be in fact only a reasonable charge for the services, although the Lake Shore Company charges no more for transporting it from Chicago to Cleveland; and the fact that the rate on each line is 15 cents for the distance named will not prevent the two companies from making a joint tariff for grain shipped from Turner to Cleveland of 12 cents,—less than the local tariff of either. We do not mean to intimate that the two companies, or a joint line, can make a tariff from Turner to Cleveland higher than from Turner to Buffalo, or for any other intermediate points between Cleveland and Buffalo; for when the two companies, by their joint

tariff, make a new and independent line, that new and independent line may become subject to the long and short haul clause. But what we mean to decide is that the through tariff on a joint line is not the standard by which the separate tariff of either company is to be measured or condemned."

There is no allegation in the first count of this indictment that the tariff and rate to Salina, Kan.; was a joint tariff made pursuant to agreement between the Union Pacific and Southern Pacific roads. The allegation is that they had a joint tariff to Kansas City, Mo., which was in fact less, although a longer distance, than the rate charged to Salina, Kan. If the rate charged to Salina was the local rate of each company,—and the presumption is, in the absence of allegation that it was a joint rate, that it was the local rate,—and the fact that they had a joint rate to Kansas City, which constituted a new line, would not furnish a basis upon which either company would be bound to adjust its own local tariff, but within the principle announced in the decison just quoted, each might insist upon charging its local rates for all transportation over its lines to intermediate points.

The second count of the indictment charges the facts substantially as set forth in the first count, alleging the joint rate between the Union Pacific and Southern Pacific Railways to Kansas City, and then charging that, notwithstanding the joint rate to Kansas City, these defendants, for and on behalf of the Union Pacific, charged and received the price of 61.4 per 100 pounds for transporting the sugar from Ogden, Utah, to Salina, Kan. The suggestions as to the first count are equally applicable to the second count. The joint rate is made the basis of discrimination. The allegation is that they charged the local rate from Ogden to Salina, which was less than their part of the joint rate to Kansas City, although Salina was the shorter distance. This I think they may do, for the reasons already suggested. The joint rate does not in any sense affect or govern the local rate to intermediate points. While, as stated by Mr. Justice Brewer, the two companies could not make a joint rate from San Francisco to Kansas City which was less than a joint rate from San Francisco to Salina, yet they may make a joint rate to Kansas City, Mo., and that fact would not affect the local rate of either company to Salina.

The third count of the indictment charges the defendants with conspiring and agreeing together to commit an offense against the laws of the United States, in that they charged, collected, and received a greater compensation, in the aggregate, for the transportation of refined sugar in car-load lots, under substantially similar circumstances and conditions, for a shorter than for a longer distance. It is alleged that they charged, collected, and received a greater compensation for hauling sugar in car-load lots, under substantially similar circumstances and conditions, from Ogden, Utah, to Salina, Kan., than was charged and received for hauling sugar in car-load lots from Ogden, Utah, to Kansas City, Mo. In this count of the indictment there is no allegation of a joint rate to Kansas City, Mo., and the joint rate is not made the basis by which the reasonableness of the local rate is to be determined, hence does not come within the principle announced in the case of Railway Co. v. Osborne.

The fourth count of the indictment alleges a joint rate to Topeka, Kan., which was less than the rate charged to Salina. This count is bad because of a typographical error in drafting it. In that portion of the count which alleges that the shipment was made under substantially similar circumstances, Kansas City is named as a point for the joint rate, whereas it should have been Topeka.

It is urged by counsel for the defendants that the prosecution of the defendants under this indictment was an effort on the part of the government to interfere with the revenues of the Union Pacific, which could not be done until the revenue of that company should exceed 10 per cent. upon the cost of the road. I cannot concur in the views expressed by counsel, but even if their contention be true, I think the question would not arise upon a motion to quash. It is therefore unnecessary to discuss it here.

As to defendant Barr, the allegation is that he was the agent who collected and received the rates which had been fixed by the other defendants. There is no allegation that he had anything to do with making the rate; and, indeed, the allegation as to the position he occupied would, I think, exclude that idea. I think, so far as the case applies to him, it comes within the principle announced in the case of U. S. v. Michigan Cent. R. Co., 43 Fed. Rep. 26; and the motion to quash will be sustained as to defendant Barr. The motion will also be sustained, as to the other defendants, to the first, second, and fourth counts of the indictment, and will be denied as to the third count. If, however, upon the trial of the cause, it should be made to appear by the evidence that the joint rate to Kansas City was made the basis of adjusting the local rates charged in this count of the indictment, the defendants would be entitled to acquittal. Indictment No. 3,091 is against the four defendants first named, and, for the reasons herein suggested in relation to the third count in indictment No. 3,092, the motion to quash will be overruled as to the first count. The motion will be sustained as to the second count, for the reason that the same typographical error, of inserting Kansas City, Mo., instead of Topeka, Kan., which occurred in the fourth count of indictment No. 3,092, occurs in the second count of this indictment.