## UNITED STATES v. NEW YORK CENT. & H. R. R. CO.

### (District Court, W. D. New York. April 4, 1907.)

**1. CARRIERS—INTERSTATE COMMERCE—TRAFFIC—FAILURE TO FILE—INDICTMENT.**

An indictment against a carrier for failure to file its tariff between intrastate points as a part of an interstate shipment of petroleum in violation of Elkins act (Act Feb. 19, 1903, c. 708, § 1, 32 Stat. 847 [U. S. Comp. St. Supp. 1905, p. 599]) alleged that a nine-cent rate per 100 for carrying petroleum in tank cars between designated intrastate terminals was established and in force under a common arrangement between connecting carriers named for a continuous shipment; and that it was agreed that defendant and the P. Railroad Company, which was to receive nine cents a barrel, should collect a separate freight charge, while the other carriers, parties to the common arrangement, should receive $23 for each tank car of oil transported from one of such terminals to a point in another state, making the aggregate charge per hundred pounds for transportation from the initial point of shipment to destination 15.34 cents. The indictment also alleged that each of the shipments were under shipping orders, transfer slips, and waybills, showing that the commodity was to be transported from the initial shipping point by continuous route to destination without unloading or transshipment. *Held*, that such allegations sufficiently showed that defendant's road, though entirely an intrastate railroad, was part of a joint through route over which interstate commerce was transported, and was therefore subject to the provisions of such act.

**2. SAME—SEVERAL CARRIERS—DUTY TO FILE RATES.**

Under the interstate commerce act (Act Feb. 4, 1887, c. 104, § 6, 24 Stat. 380), as amended March 2, 1889 (25 Stat. 855, c. 302, § 1 [U. S. Comp. St. 1901, p. 3156]), requiring several common carriers operating a through line engaged in interstate commerce to file schedules of rates constituting the basis of a through interstate rate, each carrier, though operating a line wholly within a state, which line is a portion of a through route engaged in interstate commerce through a common arrangement between several connecting carriers, is bound to comply with such act.

**3. SAME—INDICTMENT—COMMON ARRANGEMENT.**

An indictment of a carrier for failure to file its tariff of rates for petroleum, established under a common arrangement for interstate shipment, in violation of the Elkins act (Act Feb. 19, 1903, c. 708, § 1, 32 Stat. 847 [U. S. Comp. St. Supp. 1905, p. 599]), alleged the establishment of a rate for carrying petroleum between intrastate terminals under a common arrangement for a continuous interstate shipment, and that each of the shipments under such rate were under shipping orders, transfer slips, and waybills, showing that the commodity was to be transported from the point of shipment to destination by a continuous route without unloading or transshipment. *Held*, that the indictment sufficiently charged a common arrangement between the various carriers for a through interstate shipment under a joint tariff.

**4. SAME—STATUTES—REPEAL.**

Under Rev. St. § 13 [U. S. Comp. St. 1901, p. 6], providing that the repeal of any statute shall not operate as a release from liability incurred under such statute unless the repealing act shall expressly so provide, the saving clause contained in the Hepburn act (Act June 29, 1906, § 10, 34 Stat. p. 584, c. 3591), relating to interstate commerce, did not repeal Elkins act (Act Feb. 19, 1903, c. 708, § 1, 32 Stat. 847 [U. S. Comp. St. Supp. 1905, p. 599]), in so far as it affected an indictable offense thereunder, previously committed.

[Ed. Note.—Construction and operation of provisos, exceptions and saving clauses, see note to United States v. R. F. Downing & Co., 76 C. C. A. 381.]

On Demurrer to Indictment.

Charles H. Brown and S. Wallace Dempsey, for the United States.
Charles A. Pooley, for defendant.

HAZEL, District Judge.   The defendant, the New York Central & Hudson River Railroad Company, a domestic corporation, stands indicted with having knowingly failed to file with the Interstate Commerce Commission its tariff of rates and charges for conveying petroleum from Rochester to Norwood, in the state of New York, which it had established under a common arrangement with the Pennsylvania Railroad Company, the Central Vermont Railway Company, and the Rutland Railroad Company for a continuous carriage interstate from Olean, N. Y., to Burlington, Vt., in violation of section 1 of the Elkins Act, passed February 19, 1903.   Act Feb. 19, 1903, c. 708, 32 Stat. 847 [U. S. Comp. St. Supp. 1905, p. 599].   The defendant demurs to the indictment on the ground that the shipments complained of were intrastate, and therefore the provisions of the act to regulate commerce relating to publishing and filing tariff rates do not apply to such shipments.   Another ground of demurrer is that the statute relating to the alleged offense was repealed prior to the indictment.   The argument advanced at the hearing by the defendant and repeated in its brief is directed principally to the alleged insufficiency of the indictment, in that it does not charge a common arrangement between the carriers for a continuous shipment, and that it appears therefrom that no joint tariff of rates was established, but that the charge was simply the local rate.

A brief consideration of the objections urged will suffice.   The entire road of the defendant is in the state of New York, and concededly it was free from any obligation to carry the oil under the provisions of the interstate commerce act.   Upon this demurrer, however, the truth of the facts alleged in the indictment must be assumed, and thus postulated I think the defendant by its acts became amenable to the control of said act.   The indictment alleges that a nine-cent rate per 100 pounds for carrying petroleum in tank cars from Rochester to Norwood, intrastate terminals, was established and in force under a common arrangement between the carriers hereinabove named, for a continuous shipment, and that the defendant and the Pennsylvania Railroad Company, which was to receive 9 cents per barrel, should collect and receive from the shipper a separate freight charge, while the other carriers, parties to the common arrangement, should receive $23 for each tank car of oil transported from Norwood to Burlington, and that the aggregate charge per 100 pounds for transportation from Olean to Burlington was 15.34 cents.   There is also an allegation that each of the shipments complained of were under shipping orders, transfer slips and waybills, showing that the commodity was to be transported from the initial shipping point by continuous routing to Burlington without unloading or transhipment. Was the defendant under these conditions subject to the provisions of the interstate commerce act?   The answer requires an examination of the pertinent clauses in the act relating to the filing and publish-

ing of the schedule of rates, and is determinable upon the existence of a common arrangement between the carriers for a through shipment and a conventional division of the rates. By the provisions of section 6 of the act (Act Feb. 4, 1887, c. 104, 24 Stat. 380 [U. S. Comp. St. 1901, p. 3156]) as amended March 2, 1889 (25 Stat. 855, c. 382, § 1), every common carrier engaged in interstate transportation is obliged to print and keep open to public inspection schedules showing the established rates for the transportation of property which are then in force upon its route. Provision is also made for printing the schedule and posting the same in the depot or office of the carrier. The latter provision would seem to apply to a single carrier. In Consolidated Forwarding Company v. Southern Pacific Company, 9 Interst. Com. R. 205, the provision to which reference has just been made is thus interpreted:

"Every continuous rail line or route, authorized by the sixth section of the act is of necessity constituted by two or more separate roads uniting by voluntary agreement and fixing joint through rates over the line thus formed. Such a route is in every instance as definite and specific a physical line as is either of the separate roads which constitute it. The formation of through routes is not compulsory, but when established and so long as they exist, the obligations, restraints and regulations of the law attach to them in all respects as fully as to a line, composed of a single road. By the provisions of the sixth section of the act two kinds or classes of routes are recognized and provided for. The first is that of a single individual or separate road, which is required to print, keep open to inspection at stations along its line, and file with the Commission such rates of fares and charges for transportation as it may establish. The other is a continuous line or route operated by more than one carrier where the several carriers operating such a line or route establish joint tariffs of rates or fares or charges for such continuous line or route."

In United States v. Wood (D. C.) 145 Fed. 405, the provision was similarly interpreted. And a subsequent clause of the act provides that, where freight passes over continuous lines or routes. operated by different common carriers which have established joint tariffs of rates, copies. of such joint tariffs shall also be filed with the commission, and be made public by the carriers in the discretion of the commission. Provision is also made for increasing or reducing the joint rates upon notice to the commission. That a schedule of rates must be printed, published, and filed by the carriers operating a single line which extends into or through different states is apparent from a reading of the act. That copies of schedules of tariff rates must be filed to effectuate a continuous transportation pursuant to an agreement between the carriers under a joint tariff of rates is also thought to be quite clear. It is probably true that such provisions relating to the filing of joint rates is somewhat indefinite, in that it does not expressly state that the several carriers, parties to a joint tariff agreement, shall each file such copies; but, as the phrase "the several common carriers operating such line" precedes in the same paragraph the requirement relating to the filing, it is a fair supposition that Congress intended that each of the several common carriers must comply with said provision. Such evidently was the interpretation Justice Brewer put upon this clause. Gulf, Col. & Santa Fé R. Co. v. Hefley, 158 U. S. 98, 15 Sup. Ct. 802, 39 L. Ed. 910.

Moreover, this provision of the statute should receive a construction in harmony with the spirit of the act, and, though ordinarily a statute which imposed a penalty is not strictly construed against a defendant, yet, where the manifest purpose of the statute is remedial, the object of the Legislature in enacting the same is the important consideration. Thus interpreted, it is unnecessary for the indictment to specifically charge that none of the other carriers filed copies of the joint tariffs.

In support of the contention that a common arrangement between the carriers named for a through shipment interstate and a joint tariff of rates is not charged in the indictment, reliance is placed upon several prior adjudications, which, in my opinion, do not decide the precise question under consideration. It is true, the Supreme Court in C., N. O. & T. P. Ry. Co. v. Int. Com. Com., 162 U. S. 184, 16 Sup. Ct. 700, 40 L. Ed. 935, says that, in the absence of a through bill of lading for moving freight interstate and an agreement to participate in through rates or charges, an intrastate carrier does not subject itself to the act to regulate commerce. The Supreme Court, however, as pointed out in the quotation from its opinion, found in the decision of this court in United States v. Pennsylvania Railroad Company (this day filed), 153 Fed. 625, does not restrict the term "through bill of lading" to that precise document. In United States v. Chicago, etc., R. Co. (C. C.) 81 Fed. 783, the freight was forwarded on a local bill of lading under an arrangement limiting the transportation to the carrying line. In United States v. Geddes, 131 Fed. 452, 65 C. C. A. 320, there is no through bill of lading, and the freight was unloaded at the connecting points, where it was delivered to the defendant for forwarding at the local rate and without agreement to divide the tariff charges. In United States v. Mellon (D. C.) 53 Fed. 229, the indictment was held bad because it failed to charge the existence of a joint tariff under an agreement between the several carrying roads. The court held in its opinion that such an indictment was open to the presumption that merely the local rate was exacted by the carriers. It is not necessary to disagree with that decision; for in my view of this contention the facts pleaded in the indictment tend to disclose a joint rate, as that term is legally defined, although such rate was to have been separately collected by the different carriers. In L. & N. R. R. Co. v. Behlmer, 175 U. S. 648, 20 Sup. Ct. 209, 44 L. Ed. 309, the carriers divided the tariff rate under an agreement between them, and added the local rate for shipment to Summerville to the Charleston rate, so that the rate consisted in part of a joint tariff and in part of a local rate, and it was contended that no continuous line was constituted under the interstate commerce act, but the court held that such an arrangement comes under its prohibitions. Counsel for defendant earnestly argues the point that, as there was no through bill of lading in the case at bar, the shipment must be considered as wholly within the state. But, as stated, I do not think that a continuous transportation interstate is evidenced only by a through bill of lading. It is true that several of the cases to which attention has been directed, and which are cited in defendant's brief, lay stress upon the forward-

ing of the freight under a through bill of lading as indicative of a common arrangement to convey the property interstate, but in view of the decision by the Supreme Court in the case of C., N. O. & T. P. Ry. Co. v. Int. Com. Com., supra, and the decisions in United States v. Seaboard Ry. Co. (C. C.) 82 Fed. 564, and United States v. Camden Iron Works, 150 Fed. 214, and the waybills and shipping orders, together with the assertion in the indictment that the carriage was without interruption or unloading and under a common arrangement for through routing, the shipment here cannot be regarded as an independent carriage by the defendant from Rochester to Norwood. In United States v. Wood (D. C.) 145 Fed. 405, it was held that the test of subjection to the act was through routing in interstate commerce. The court says:

"When a carrier unites with one or others in making a rate for interstate traffic, and a through bill is issued therefor, it is subject to the act. An express agreement for a through rate is not required, but the successive receipt and forwarding in the ordinary course of business by two or more carriers in interstate traffic, under through bills or any arrangement for a continuous carriage over their lines, constitutes assent to such common arrangement for the carriage within the meaning of the act."

Since the briefs were filed herein, counsel for the defendant has directed my attention to the case of Gulf, Col. & Santa Fé R. Co. v. State of Texas (recently decided by the Supreme Court of the United States) 27 Sup. Ct. 360, 51 L. Ed. ——. In that case the shipment was unquestionably a local one, nor was the shipment accompanied by a bill of lading from Texarkana to Goldthwaite until after the arrival of the freight at Texarkana. The distinction between that case and the case at bar is quite clear; for here, according to the indictment, the rate, though separately charged and collected, was pursuant to an arrangement for a through carriage. Considering the indictment in its entirety, I think it sufficiently charges a common arrangement between the carriers for a through shipment interstate under a joint tariff of rates to effectuate such carriage, and the defendant is liable for omitting to file the schedule of rates in accordance with the provisions of the act.

The next point is that the saving clause contained in section 10 of the Hepburn act, approved June 29, 1906 (34 Stat. p. 584, c. 3591), repeals section 1 of the Elkins act, under which the defendant is indicted. Upon this point it is important to consider section 13 of the Revised Statutes of the United States (Act Feb. 25, 1871, c. 71, § 4, 16 Stat. 432 [U. S. Comp. St. 1901, p. 6]), which substantially provides that the repeal of any statute shall not operate as a release from liability incurred under such statute, unless the repealing act shall expressly so provide. The defendant, referring to the saving clause in the Hepburn act, contends that the words, "shall not affect causes now pending in courts of the United States," must be given the full weight intended by Congress—that it is a repealing act operating as a remission of all prior offenses against the provisions of the statute under consideration. The question submitted is not free from difficulty, but I have reached the conclusion that the language of section 10 is not susceptible to the broad scope claimed by the defendant. In the

absence of language expressing such intention, the release from liability and punishment by Congress of prior offenders against the provisions of the Elkins act is not implied, although apparently from an abundance of caution, and perhaps to "prescribe a mode of procedure," Congress inserted the provision in the repealing act that pending causes should not be affected thereby. There has been much discussion in the courts of the United States in relation to section 13 of the Revised Statutes (United States v. Barr, 24 Fed. Cas. 1016; United States v. Reisinger, 128 U. S. 398, 9 Sup. Ct. 99, 32 L. Ed. 480; Lang v. United States, 133 Fed. 201, 66 C. C. A. 255), and its proper construction has, indeed, been exhaustively considered and passed upon in connection with the Elkins act by Judge Landis in United States v. Standard Oil Co. (D. C.) 148 Fed. 719, by Judge Morris of the Fourth Division, District of Minnesota, in United States v. Chicago, etc., R. Co., 151 Fed. 84, and by Judge Holt of the Southern District of New York, in United States v. Delaware, L. & W. R. Co. (C. C.) 152 Fed. 269. In view of the complete discussion of this question in these opinions, and the reasons therein assigned for the conclusions which have been arrived at, I do not regard it necessary to pass upon the objections as fully as if the proposition came before me as an original one. There appears to be a divergence of judicial view upon the subject. See dissenting opinion of Judge Jenkins in Lang v. United States, supra, and by Judge Lochren in United States v. Chicago, etc., R. Co., supra. The weight of authority, however, would seem to be that under section 13 of the Revised Statutes, which concededly abrogated the common-law rule no repealing statute can be given the effect of putting an end to the punishment for an offense previously committed and for which an indictment will lie, unless the repealing act expressly so declares. Such is not the saving clause in question, and accordingly the objection is not sustained.

The demurrer is overruled.