## THOMPSON v. UNITED STATES.
### No. 7769(1).

United States District Court
E. D. Missouri, E. D.
Oct. 30, 1951.

T. T. Railey, George W. Holmes and Toll R. Ware, St. Louis, Mo., for plaintiff.

William J. Hickey, Sp. Asst. to Atty. Gen., Department of Justice, for defendant.

Daniel W. Knowlton, Chief Counsel, and Samuel R. Howell, Asst. Chief Counsel, Interstate Commerce Commission, Washington, D. C., for intervening defendant, Interstate Commerce Commission.

Oscar J. Moberg of St. Louis, Mo., for intervenor, Omaha Grain Exchange of Omaha, Nebraska.

Before SANBORN, Circuit Judge, MOORE, Chief Judge, and HULEN, District Judges.

HULEN, District Judge.

This is an action, 28 U.S.C.A. § 2325, brought by the Trustee of the Missouri Pacific Railroad Company to enjoin execution of an order of the Interstate Commerce Commission entered on July 10, 1950, requiring the carrier to establish reasonable rates for the transportation of grain and grain products, shipped from points on its line in central Kansas to Omaha, Nebraska, and Council Bluffs, Iowa, over routes maintained between such points by the plaintiff (hereinafter referred to as Missouri Pacific) in connection with the Chicago, Burlington & Quincy Railroad (hereinafter referred to as Burlington), which rates were, by the Commission's order, not to exceed rates maintained by the carriers between similar origin points and Kansas City, Missouri.

This cause was initiated before the Interstate Commerce Commission, on complaint filed by the Omaha Grain Exchange of Omaha, Nebraska, against the Missouri Pacific and the Burlington charging violation of Sections 1 and 3 of the Interstate Commerce Act, 49 U.S.C.A. §§ 1, 3. Section 3 of the complaint filed before the Commission contains the following paragraph: "That the defendants herein publish rates and maintain for transportation of grain and grain products to the market of Omaha, Nebraska (which includes Council Bluffs, Iowa) rates and charges that are unjust and unreasonable in violation of Section I. of the Interstate Commerce Act from points in Kansas located on the Missouri Pacific Railroad from Concordia, Kansas, and west, thereof known as the Central Branch, operating due west from Atchison, Kansas, and subjecting complainant to undue prejudice and disadvantage in violation of Section III. of the Interstate Commerce Act."

The prayer of the complaint sought the Commission's order as to each carrier "to cease and desist from the aforesaid violations of said Act and establish and put in force and apply in future from the territory named in paragraph 3 hereof to the market of Omaha such other rates as the Commission may deem reasonable and just * * *".

The complaint before the Commission sought no relief under Section 15 of the Act, 49 U.S.C.A. § 15. The Commission granted no relief under Section 15 of the Act. The proceedings here for review are a complaint charging violation of Sections 1 and 3 of the Act and an order of the Commission conforming to the complaint. Consideration of right of the Commission to establish a through route under Section 15 of the Interstate Commerce Act is foreign to the record of the Commission presented here for review.

The Missouri Pacific operates a single line route westward from Atchison, Kansas (a point on its main north and south line between Omaha and Kansas City), through Concordia to Lenora, points which are 155 and 293 miles, respectively, west of Atchison. The territories of Concordia and Lenora are representative origin points for the shipment of grain to points such as Kansas City, Atchison, and Omaha, commonly referred to as the primary markets, from which points grain or products manu-

factured therefrom are reshipped to points east. In the processing of grain a differential of a cent in freight rates will adversely affect a market. A rate of 19 cents per hundred pounds is charged for a shipment of grain from Lenora to Kansas City. This shipment would move over the Missouri Pacific's line through Concordia to Atchison and then southward over its main line to Kansas City. The distance is 341 miles. For a shipment from Lenora to Omaha, through Concordia to Atchison, then northward to Omaha, the Missouri Pacific has a rate of 25.5 cents. The mileage is 449.5 miles. The Burlington operates a route into Concordia, and publishes a rate of 16 cents for a shipment from that point to Omaha, a distance of 187 miles. A shipment from Lenora to Omaha, moving to Concordia, thence over the Burlington's lines into Omaha, would travel 336 miles, or 5 miles less than the distance from Lenora to Kansas City, but the combination of rates applicable for such a through shipment is 30 cents, as compared to the 19 cent rate to Kansas City.

The Commission found: "As through routes are already in existence the combination rates over the short routes through Concordia by way of the Missouri Pacific and the Burlington, and the only relief here sought by complainant being reasonable rates over those routes, division 2 correctly concluded that it was unnecessary to discuss the provisions of section 15(3) and (4), and that those provisions of the act were no bar to the prescription of reasonable rates over such routes."

The Missouri Pacific does not seriously dispute the unreasonableness of the rates which were in issue before the Commission. Its petition for rehearing before the Commission states its reason for maintaining the rates complained of. "The route over which the rates are assailed is not a published tariff route; it is closed to all intents and purposes by reason of the fact that the rates applicable over said route are made a combination of locals on Concordia and are higher than the through rate over the single line route of the Missouri Pacific."

By this action the Missouri Pacific attacks the order of the Commission, claiming it creates a through route along the lines of the two carriers to Omaha, forcing Missouri Pacific to short haul itself, because it has its own local line which by a longer route connects the Kansas points with Omaha.

All parties to this proceeding, in oral argument and by brief, concede the sole question is whether there was a through route in existence over the two carriers' lines via the Concordia connection, from Kansas points on Missouri Pacific's lines, west of Concordia, to Omaha and Council Bluffs, over the Burlington, at the time of the commencement of the proceedings before the Commission and the Commission's order.

If the finding of the Commission that a through route did exist is based on substantial evidence, its order should not be disturbed by this Court. There is a presumption in the absence of clear evidence to the contrary that the Commission has properly performed its official duties and this presumption supports its official acts. It is the province of the Commission and not the Court to pass upon the weight and credibility of the evidence. It is no concern of this Court whether the conclusions of the Commission were correct if there is substantial evidence to support them.[1]

We quote the definition of a through route which the Courts uniformly recognize: "A through route is an arrangement, express or implied, between connecting railroads for continuous carriage from a point on the line of one to a destination on the line of another. A joint rate is not essential. The through rate may as well be a combination of locals or proportionals."

---

1. Some of the testimony evidenced confusion as to what sections of the Act the proceedings were based on. But there is ample record showing the complaint assigned violation of Sections 1 and 3 of the Act, testimony was offered on that issue and the carriers so understood the issue. See testimony of witnesses Kuhn (p. 15), Vauck (p. 101), Thomas (p. 175), Allison (pp. 115, 128), and letter (p. 218).

(Grain and Grain Products, 129 I.C.C. 261, 264.)

We find no case holding that one of the requirements of a through route is that it must be with respect to all character of merchandise. It seems elemental that a through route for merchandise carriage is the vital element in the arrangement. That the carrier by its own act, in fixing rates on certain commodities, may have restricted use of the route to particular commodities does not destroy the conclusion that it is a through route under the definition. Where a route is open and available and adequate to meet the needs of the public there is no occasion for the Commission to prescribe another route.

The first requisite to a through route is a physical connection between the tracks of the connecting carriers. This physical feature is present in this case. Physical connection of the tracks alone does not necessarily mean a through route exists. The official railway equipment Register compiled by the various railroads is on file with the Commission. It shows that the two carriers involved in this case, as well as other carriers, each list Concordia as a point of interchange of traffic with other lines, thus holding out to the public the existence of facilities for operation and existence of a through route.

Each of the carriers has combination rates over its part of the line involved. Missouri Pacific admits a shipment of grain could be made at a tariff composed of a combination of the local rates. The combination rate is so high it commercially closes the route on grain products. The fact that no grain has ever been shipped over the route at the combination rate is not conclusive that the route does not exist.

L. E. Kipp, General Traffic Agent for various lines operating in the area involved in this case, including the Missouri Pacific, has published on behalf of the carriers class rates for the shipment of specific commodities between points of origin in the area, on the line of the Missouri Pacific, and destination area, on the line of the Burlington, to stations short of Omaha, and over the route which the Commission found to be a through route. The parties conceded that these published rates are subject to judicial notice by the Commission and this Court. During oral argument counsel for the Missouri Pacific was asked whether or not as a result of the class rates in the Kipp publication they would issue a through bill of lading for a shipment on Missouri Pacific's line to a point on the Burlington. The answer was—"We might do that, but not Omaha". Counsel was further asked the question—"would you admit that there is a through route over these two connecting routes to all points short of Omaha?" The answer—"There might possibly be to some of them, but it would be short of Omaha".

Missouri Pacific then took the position that although a through route existed for some commodities this fact did not warrant the finding that the route existed for grain and grain products. It cites in support of its position the case of Stickell v. Alton Railroad Company 255 I.C.C. 333, and California Milling Company v. A. T. & S. Fe R. Co., 276 I.C.C. 531. We are unable to agree with appellant that these authorities support its position.

The Commission cited the case of Virginian Railway Company v. United States, 272 U.S. 658, 47 S.Ct. 222, 71 L.Ed. 463, as authority for its conclusion of the existence of a through route. The facts in that case disclose a striking analogy to the present case. The Virginian line connected to 109 coal mines in West Virginia, all of which received service at reasonable rates to eastern points on the Atlantic Coast. The controversy arose in regard to shipments westward from these various mines. Combination rates had been published by the Virginian and Chesapeake & Ohio Railroads, which had a physical track connection west of these 109 mines. However, the combination rates were so high that the westward routes were commercially closed. (This was done purposely, because the Virginian wanted to divert all of the traffic eastward, wholly on its own line. The Commission in the instant case found that Missouri Pacific wanted to divert grain to Kansas City.) Subsequently the Virginian entered into an agreement

with the Chesapeake & Ohio for reciprocal switching, whereby 45 of the 109 mines on the Virginian line would enjoy through routes at reasonable rates to the west. It was the other 64 mines which brought the complaint before the Commission, claiming that they also should enjoy reasonable through rates to the west. These were the only two factors before the Commission to indicate the existence of a through route, namely the combination rates, excessively high, plus the through route privileges already enjoyed by some of the mines on the Virginian line. The Supreme Court held—"Through routes to the West were already in existence; and there were through rates by combination." 272 U.S. loc. cit. 666, 47 S.Ct. loc. cit. 225. The orders of the Commission in the Virginian case and the instant cases are similar. In neither case was a joint rate prescribed. The Commission found that the existing combination rate was unreasonable and discriminatory, and ordered it to be not higher than a specific amount. For such a finding and order, it is unnecessary that there be a finding of public interest as required under Section 15(3). See footnote 1, 272 U.S. loc. cit. 667, 47 S.Ct. 222.

We conclude—evidence of physical interchange connection at Concordia, plus long established joint rates to some points on the Burlington short of Omaha, plus combination rates to Omaha, furnish sufficient evidentiary basis for the conclusion of the Commission of the existence of a through route and its order for reasonable rates over that route.

The argument of the Missouri Pacific that the Commission's order will compel it to short-haul itself can find no basis in the record. It is not now carrying any grain from the origin points in Kansas to Omaha because of its prohibitive rates. The present rate over appellant's line does not protect "its long-haul on this traffic" to Omaha. It follows the Commission's order does not direct appellant to "short-haul itself" on any freight now being carried to Omaha by the Missouri Pacific. The Supreme Court has declared there is no basis for the concept that restrictions on the power of the Commission to establish through routes, found in Section 15 of the Act, should also be applied to limit the power of the Commission to establish reasonable rates. Atchison T. & S. F. Ry. v. United States, 279 U.S. 768, loc. cit. 776, 49 S.Ct. 494, 73 L.Ed. 947.

Execution of the Commission's order may result in some loss of revenues by diverting grain shipments from Kansas City to Omaha but this probable result creates no right in the abstract for the Missouri Pacific to tell shippers where they shall consign their grain or control the grain markets. Regulations of the Interstate Commerce Commission are not alone for the benefit of the carriers; the public has an interest as well. It is for the Commission to balance and determine how these interests shall be preserved. Stickell v. Alton Railroad Company, supra, 255 I.C.C. loc. cit. 337, as follows: "It is not the province of railroads to determine what markets shall be available to sellers or buyers, or by * * * the maintenance of rate disadvantages to restrict or circumscribe the opportunities of shippers located on other railroads to sell in markets served by them. It is their function to transport in the channels necessitated by trade conditions and not to fix limitations on commerce. The public interest demands that all shippers be accorded relatively equal opportunities to reach all reasonably available markets."

Injunction denied and plaintiff's complaint dismissed.

MOORE, Chief Judge.

I am unable to agree with the opinion of the Court. I would hold the order invalid, and enjoin its enforcement.

The Missouri Pacific has its own route between the representative origin points to Omaha, which route passes through Concordia. It desires, of course, to handle shipments between these points on its own line, on which the rate for grain is 25½ cents, which rate has not been attacked and is presumably reasonable. That rate, however, is 6½ cents higher than the rate from the representative origins to Kansas City, the Kansas City route being over a hundred miles shorter than the Missouri

Pacific route to Omaha. The result, of course, is that Omaha cannot compete with Kansas City.

The Burlington connects Omaha and Concordia, and intervening points. From the representative origin points to points on the Burlington between Omaha and Concordia there are published joint class rates for certain commodities. The joint class rates cease short of Omaha, and the rate to Omaha via the Burlington (hereinafter called the Concordia route) is a combination rate of 30 cents, the combination rate being made up for the sum of the local rates of 16 cents and 14 cents.

Missouri Pacific admits that the combination rate over the Concordia route is so high as to be prohibitive, but it states that "the publication of those local rates, the combination of which is higher than the through rate over the Missouri Pacific direct, was the only effective means the Missouri Pacific had of telling the shipping public that through grain traffic from * * * [the points of origin] * * * would not be handled over these lines." Missouri Pacific also argues that the Commission's order will require it to shorthaul itself in violation of Section 15(4) of the Act.

There are, obviously, points on the Burlington between Concordia and Omaha which cannot be served by the Missouri Pacific Missouri River route. Consequently, under Section 1(4) of the Act, Missouri Pacific was under a duty to establish reasonable through routes upon request therefor from the origin points to Concordia on its line, and from Concordia to points short of Omaha on the Burlington. The Missouri Pacific has apparently complied with this duty, as counsel for the Commission state that such through routes exist.

Insofar as the duty to establish a through route via the Burlington from the points of origin to Omaha is concerned, it should be noted that the Missouri Pacific can and does provide transportation between these points over its own route. Section 15(3) of the Act provides that the Commission may establish through routes necessary or desirable in the public interest. Section 15(4) makes an exception to the extent that the Commission may not, in establishing a through route, require a carrier to shorthaul itself, unless the carrier's long-haul route is found to be unreasonably long, or unless the proposed through route is necessary to provide adequate and more efficient transportation; and that subject to these limitations and so far as consistent with the public interest, the Commission shall give reasonable preference to the carrier which originates the traffic. Within the limitations of Section 15(4), railroads are entitled to decline to establish through routes which will shorthaul them. Missouri Pacific was under no duty to establish a through route to Omaha via Burlington, until the additional requirements of Section 15(4) were met. The position of the Missouri Pacific is that the requirements which must be met before the Commission can establish a through route under Section 15(4) do not now exist.

The only issue presented by this appeal is whether the Commission had the authority to prescribe the through combination rate over the Concordia route. The Commission found that a through route existed, and it is argued that if a through route did exist, then the Commission had authority to prescribe the through combination rate. The issue then is whether the evidence supports the Commission's finding of an existing through route.

The facts on which the Commission has relied to support this finding are the following: (1) physical connection of the Missouri Pacific and Burlington tracks at Concordia; (2) the listing of Concordia in the official railway equipment register as a point of interchange with other lines; (3) the establishment of through rates to points short of Omaha on specific commodities; and (4) the evidence of a combination rate over the route in question.

Counsel for the Government admitted in oral argument that the fact of physical connection alone was not sufficient to establish a through route. The Commission argues that the establishment of joint class rates to points short of Omaha on the Concordia route is evidence of a through route to Omaha, as "through routes to certain points may be indicated by the presence

of through routes to other points on the same line, although the carrier may not have intended such results". Through Routes and Through Rates, 12 I.C.C. 163, 168.

As pointed out above, the Missouri Pacific was under a duty to establish reasonable through routes upon request to points short of Omaha under Section 1(4) of the Act, and if such routes had not been established, the Commission could have ordered them if they were found to be in the public interest under Section 15(3). Yet Missouri Pacific was under no duty to establish a through route to Omaha on the Concordia route merely because that route would be reasonable and desirable in the public interest. The policy of the Act permits the carrier additional protection where, as here, such a through route will force it to short-haul itself. Section 15(4). I do not believe that it was the intention of Congress to establish a rule that a carrier's compliance with its duty under Section 1(4) of the Act should cause it to lose a right given it under Section 15(4).

Moreover, the Commission's statement in Through Routes and Through Rates, supra, that "through routes to certain points may be indicated by the presence of through routes to other points on the same line" relied on an earlier case, Violations of the Act to Regulate Commerce, 8 I.C.C. 290, 301. Examination of the latter case reveals that it does not support the quoted statement.

The Commission in that case had before it a situation where the railroad had established joint rates from one point, Springfield (Southwest of St. Louis), on its line to Chicago, but had refused to establish through rates to Chicago from intermediate points between Springfield and St. Louis. From these intermediate points, closer to Chicago than Springfield, it actually cost more to ship to Chicago than it did to ship from Springfield. The Commission held that this practice was unlawful, relying on the ruling of the Supreme Court in Cincinatti, N. O. T. P. Ry. Co. v. Interstate Commerce Commission, 162 U.S. 184, 16 S.Ct. 700, 40 L.Ed. 935, which was based on Section 4 of the Act.

Section 4, 49 U.S.C.A. § 4, prohibits carriers from charging more "for a shorter than for a longer distance over the same line or route in the same direction, *the shorter being included within the longer distance*" (emphasis mine). The purpose of this section is to forbid "any undue or unreasonable preference or advantage in favor of any person * * * or locality". Texas & Pacific Ry. v. Interstate Commerce Commission, 162 U.S. 197, 219–220, 16 S.Ct. 666, 675, 40 L.Ed. 940. The prohibitions of Section 4 should not be distorted into a rule of law which would imply a through route over an entire line, where there is a through route over only part of that line. On the contrary, the fact that the joint rates cease short of Omaha would logically give rise to an inference that the through route ceases at the same point—particularly where there has been no transportation beyond that point.

Nor do I think that the listing in the official register of Concordia as a point of interchange with other roads is any evidence to support the finding of a through route to Omaha. Since traffic to points short of Omaha existed, it is difficult to see how Concordia could be listed otherwise.

The last fact relied on by the Commission in support of the finding of a through route, is the existence of the combination rate over the Concordia route. Under Section 6(1) of the Act, 49 U.S.C.A. § 6(1), Missouri Pacific was under a duty to publish the rates to points short of Omaha on that route. But in the absence of the establishment of a through route all the way to Omaha, that section did not require it to publish the combination rate to Omaha. Missouri Pacific states that the publication of the combination rate to Omaha was necessary to inform the public that that route was commercially closed and that shipments to Omaha would be handled only on its own Missouri River line to Omaha.

The combination rate is the sum of the local rates and is so high as to be prohibitive, with the result that the route is commercially closed. It may, nevertheless, be a through rate, and a through rate presupposes a through route. "A through route is an arrangement, express or implied, be-

tween connecting railroads for continuous carriage from a point on the line of one to a destination on the line of another. A joint rate is not essential. The through rate may as well be a combination of locals or proportionals." Grain and Grain Products, 129 I.C.C. 261, 264.

There is no doubt that here there is a through rate, a combination of locals, although the route is commercially closed because the rate is prohibitive. The fact that a route is so closed has been held not to bar the Commission from prescribing reasonable and nondiscriminatory through (but not joint) rates under Sections 1 and 3 of the Act, without proceeding under Section 15(3). Virginian Ry. Co. v. U. S., 272 U.S. 658, 666–667, 47 S.Ct. 222, 71 L.Ed. 463.

The present case can be distinguished from the Virginian case. Though the Court said in the Virginian case that the through route was commercially closed, there was an open through route in existence from points on the Virginian on either side of the complainants' mines, the complainants' mines "being entirely surrounded by mines taking the district rate which * * * [complainants] * * * seek". Wyoming Coal Co. v. Virginia Ry. Co., 96 I.C.C. 359, 361. The Commission there found that the plaintiff shippers were subjected to undue prejudice by this arrangement and that the rates were themselves unreasonable. The Concordia route in the present case is closed to everybody. And in the Virginian case, the short haul factor was not present, and only Section 15(3) was involved. The Virginian was merely attempting to build up a coal traffic in one direction. Section 15(4) permits carriers to avoid short hauling themselves.

The definition of a through route states that it is an arrangement for continuous carriage between points on different lines. In actual practice, the arrangement here was one which prohibited continuous carriage to Omaha over the Concordia route. I think that such a technicality as a commercially closed route should not, in view of Section 15(4), be considered evidence of a through route.[1] I therefore conclude that the finding of an existing through route is not supported by the evidence and that the relief prayed for should be granted.

Nor do I agree with the argument that the Commission's order will not require the Missouri Pacific to shorthaul itself, because there is no grain traffic to Omaha at this time on the Missouri Pacific's single line route. Clearly, the Concordia route embraces substantially less than the entire length of the Missouri Pacific's road which lies between the termini of that route. The language of Section 15(4) is clear and without ambiguity, and the Court is "not at liberty to conjure up conditions to raise doubts in order that resort may be had to construction. * * * Construction may not be substituted for legislation". United States v. Missouri Pacific Ry. Co., 278 U.S. 269, 277, 49 S.Ct. 133, 136, 73 L.Ed. 322.

Plaintiff also cites decisions of the Interstate Commerce Commission which apparently hold that the Commission ought not to order lower combination rates, where combination rates already exist, even though it has the power to prescribe such rates, on the ground that to do so would be to require the carrier to shorthaul itself in violation of Section 15(4).[2] In view of my decision that there is no evidence to support the Commission's finding of the existence of a through route, it is unnec-

---

1. Commissioner Eastman, concurring on Beaman Elevator Co. v. C. & N. W. Ry. Co., 155 I.C.C. 313, 315, after consideration of the Virginian case, stated that through routes "may, and frequently do, exist" where there are combination rates.

2. Western Pacific Ry. Co. v. Northwestern Pacific Ry. Co., 191 I.C.C. 127; Port of New York Authority v. A. T. & S. F. Ry. Co., 144 I.C.C. 514, 517, 518; Commissioner Eastman's concurring opinion in Bea-

man Elevator Co. v. C. & N. W. Ry. Co., 155 I.C.C. 313, 315. See also R. C. Williams & Co. Inc. v. N. Y. C. Ry. Co., 269 I.C.C. 297, 300, and Lourie Mfg. Co. v. C. N. R. R. Co., 42 I.C.C. 448. In the latter case, cited in the Virginian case, for the proposition that there were through rates by combination, the Commission distinguished the case from another case, in which combination rates over a commercially closed route were held not to create a through route.

essary to decide this question. A further point is made by plaintiff, to the effect that the order requires the establishment of joint rates. But it is clear that the order, if not otherwise invalid, could be complied with by establishing lower combination rates.